150

**UNITED STATES DISTRICT COURT**

**EASTERN DISTRICT OF MICHIGAN**

**SOUTHERN DIVISION**

Case No. 26-13466

Hon. Jonathan J.C. Grey

JURY DEMAND: [ ] YES [ ] NO

MONIQUE BAKER McCORMICK,
Plaintiff,

v.

ALISHA BELL, in her official capacity as Chairperson of the Wayne County Commission,
Defendant.

**FIRST AMENDED VERIFIED COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF**

42 U.S.C. § 1983; First and Fourteenth Amendments; 28 U.S.C. §§ 2201-2202

FILED
SEP 1 6 2026
CLERK'S OFFICE
DETROIT

## PARTY AND CONTACT INFORMATION

**Plaintiff:** Monique Baker McCormick

Title: Wayne County Commissioner

Address: 20169 James Couzens, Detroit, MI 48235

Phone: 313-268-8802

Email: Mccormickreport@yahoo.com

**Defendant:** Alisha Bell

Title: Chair, Wayne County Commission

Address: 500 Griswold, 7th Floor, Detroit, MI 48226

Phone: (313) 224-0936

Email: abell3@waynecountymi.gov

Plaintiff proceeds pro se. Defendant is sued in her official capacity for prospective declaratory and injunctive relief.

Plaintiff Monique Baker McCormick, proceeding pro se, alleges as follows:

## I. NATURE OF THE ACTION

1. Plaintiff brings this action in her own name to vindicate her own constitutional rights of speech, petition, advocacy, and association. Although the challenged conduct arose in connection with her service as an elected Wayne County Commissioner, Plaintiff does not sue on behalf of Wayne County, the Commission, or District 6 as a separate legal entity. Defendant Alisha Bell is sued only in her official capacity for prospective declaratory and injunctive relief because the challenged Measures assign present enforcement authority to the office she holds. Plaintiff seeks no damages against Defendant for legislative acts. See Bond v. Floyd, 385 U.S. 116, 135-37 (1966); Bogan v. Scott-Harris, 523 U.S. 44, 54-55 (1998); Supreme Court of Virginia v. Consumers Union of the United States, Inc., 446 U.S. 719, 736-37 (1980).

1A. This case is principally about alleged retaliation, not proven youth misconduct. Plaintiff alleges that despite repeated requests for the factual basis for restrictions, she was not provided a finding establishing that she, a student, or a parent committed wrongdoing, nor a documented incident showing that a participant was harmed because of the Youth Council. Plaintiff does not ask the Court to disregard genuine safety concerns; she accepts neutral child-safety requirements. She alleges that the program instead taught students to enter government as observers and learners and leave able to speak, question, develop policy proposals, and advocate for themselves and their communities. The First Amendment protects speech and petitioning concerning governmental affairs, including the speech of elected legislators. See Bond, 385 U.S. at 135-37; Pickering v. Board of Education, 391 U.S. 563, 571-75 (1968); Borough of Duryea v. Guarnieri, 564 U.S. 379, 388-89 (2011).

1B. Plaintiff administered and coordinated the Youth Council, but she did not hold or control the County purse. Plaintiff alleges that County-funded Youth Council expenses were authorized and processed through Defendant Bell, as Chairperson, and Commission fiscal administration. Plaintiff further alleges that actual County spending on the program was typically approximately $5,000 to $6,000 per year against an annual allocation of approximately $50,000, with substantial programming supported by community partners and in-kind contributions. The Washington travel dispute likewise did not involve Plaintiff spending denied County travel funds: after County funding was declined, Plaintiff obtained outside support and participating parents provided written authorization and releases for their children. Plaintiff pleads these facts to distinguish program administration from fiscal disbursement and to rebut any implication that the controversy arose from an established finding of financial wrongdoing. (Emphasis added.)

2. Plaintiff does not challenge Wayne County's authority to protect children or to enforce lawful and neutral requirements concerning safety, parental consent, public funds, procurement, transportation, County property, personnel, ethics, or accounting. Her claim is narrower. She alleges that, as she continued to speak, object, petition, seek independent legal review, and advocate for youth, the restrictions became broader and more specific until they reached the very activity she was continuing. The central First Amendment question is whether governmental authority may be used in retaliation for that protected speech and petitioning.

3. The practical effect is important. To Plaintiff's knowledge, she is presently the only Commissioner operating an established, recurring youth civic program and has been the only Commissioner to maintain such a program since 2020. The 2026 Measures are written generally, but they restrict the type of recurring youth activity Plaintiff was actually conducting when they were adopted. Plaintiff alleges that this practical effect, considered with the timing and history

described below, supports an inference of First Amendment retaliation. (Exhibits L-1 through L-3.)

3A. The challenged 2026 Measures are also youth-specific in a way that matters to Plaintiff's retaliation and neutrality theories. They impose a categorical single-day structure, resource restrictions, fundraising restrictions, and a special permissibility process on recurring youth programming. Plaintiff alleges that the Measures do not impose the same single-day limitation on recurring constituent programming generally, including programs directed to seniors or veterans. Plaintiff does not allege that age is a suspect classification under federal law. She alleges that the youth-specific fit of the Measures is relevant to whether the asserted safety, liability, and administrative reasons are neutral explanations or whether the Measures were tailored to the very recurring youth program she had continued to defend and operate. See Massachusetts Board of Retirement v. Murgia, 427 U.S. 307, 312-14 (1976) (age classifications generally receive rational-basis review).

4. The Commission and the Chairperson are not the same. Wayne County Charter § 3.114(a) gives the Commission, as a body, authority to establish its rules and procedures. The challenged Measures, however, place substantial administrative and enforcement functions in the Chairperson. Rule 7 identifies the Chairperson as the Commission's administrator and personnel director; Rule 11 gives the Chairperson significant administrative and resource authority; and the Youth Safety Policy gives the Chairperson "sole jurisdiction" to decide disputes over whether youth activities are permissible, subject to the Policy's stated two-thirds Commission override. Plaintiff asks both what authority local law actually permits the Commission to place in one elected Commissioner over another and whether any lawful authority may be exercised in

retaliation for protected speech, petitioning, and continued constituent service. (Exhibits L-2, L-3 and S.)

5. The August 2026 Measures did not arise in isolation. Beginning at least in 2022, disputes involving Defendant Bell and Commission administration repeatedly affected Plaintiff's constituent communications, office resources, Youth Council, Rule 11, fundraising, travel, and recurring youth programming. Plaintiff continued to object and ask for legal authority. She repeatedly requested independent outside legal review. Commission Counsel later stated that an individual Commissioner was not authorized to retain outside counsel in her official capacity and that outside-counsel retention for the Commission was governed by the Charter and Outside Legal Counsel Ordinance. Yet on September 2, 2026, Commission Counsel disclosed that on June 22, 2026, "with approval of Chairwoman Bell," Commission Counsel engaged Dickinson Wright to provide consultation services concerning proposed revisions before the August 20 adoption. Plaintiff alleges the contrast as evidence of notice, Bell's personal involvement, and differential treatment in the larger chronology - not as a separate federal right to County-funded counsel and not as an allegation that Dickinson Wright approved the Measures. (Exhibits M-3, N, N-1, N-2, N-3 and T.)

6. Wayne County also has an existing Ethics Ordinance and Ethics Board process that expressly applies to elected officials, including County Commissioners. That process provides for a written complaint identifying the alleged ethics violation, notice, an opportunity to answer, a hearing, and findings. The 2026 Measures create a different structure involving the Chairperson and an Administrative Leadership Group that can affect activities and office resources. Plaintiff does not allege that the Ethics Board automatically has exclusive jurisdiction over every internal dispute. She asks instead how the existing ethics process, the Charter, and the newly created Chair/ALG

structure fit together when one elected Commissioner is empowered to judge or burden another elected Commissioner's conduct. (Exhibits L-2, L-3, R and S.)

7. Those questions are concrete, not abstract. Plaintiff and Defendant Bell are independently elected Commissioners representing separate districts and constituents. The governing documents must be read together: first, what authority the August 20 Measures actually assign; second, why those provisions create Defendant Bell's present connection to enforcement; third, whether the Charter and other controlling law permit the Commission to place that authority in the Chairperson; fourth, how the existing Ethics Ordinance process for elected officials relates to the new enforcement structure; and fifth, even if some administrative authority is lawful, whether it may constitutionally be exercised in retaliation for Plaintiff's protected speech, petitioning, requests for independent review, and continued youth advocacy. The fifth question is the federal constitutional core of this action. (Exhibits L-1 through L-3, R and S.)

8. The controversy is happening now, and Defendant Bell is the official whose present enforcement connection makes prospective relief necessary. Plaintiff does not name Defendant merely because she participated in developing, supporting, or adopting the challenged Measures. Plaintiff names Defendant because the Measures themselves place present administrative and enforcement authority in the Chairperson. Most directly, the Youth Safety Policy gives the Chairperson "sole jurisdiction" to decide disputes over whether a Commissioner's youth activity is permissible, subject to the stated two-thirds Commission override. The Rules separately identify the Chairperson as administrator and personnel director and assign substantial administrative and resource authority. The record also shows Defendant's personal involvement in the underlying dispute, including her communications and decisions concerning Plaintiff's Youth Council, Commission-funded activities, outside-counsel requests, and approval of the

June 22 outside-counsel consultation concerning proposed revisions. Students were recruited and accepted for 2026-2027, a fundraiser is scheduled for September 30, and the first meeting and swearing-in are scheduled for October 1. Plaintiff seeks narrow prospective relief against threatened enforcement, not damages for legislative acts. (Exhibits L-2, L-3, N-2 and Q-1 through Q-6.)

8A. Defendant's connection is unusually direct. Plaintiff has verified that Resolution Nos. 2026-618, 2026-619, and 2026-620 each identify Bell alone as the sponsoring Commissioner, with no other Commissioner named as sponsor or cosponsor. Bell also chaired the Rules Committee process through which the Measures were advanced, and Commission Counsel advised Plaintiff that the Chairperson schedules Rules Committee meetings and determines agendas. Most importantly for prospective relief, Resolution No. 2026-620 gives the Chairperson 'sole jurisdiction' in the first instance over disputes concerning whether a Commissioner's youth activity is permissible, subject to the stated two-thirds override. Sponsorship and voting are legislative acts, but enforcement is functionally distinct. See Bogan, 523 U.S. at 54-55; Consumers Union, 446 U.S. at 736-37. (Exhibits L-1 through L-3, M-6.)

## CASE ROADMAP — THE RETALIATION STORY AT A GLANCE

| Step | What happened | Where the details appear |
|---|---|---|
| 1 | Plaintiff spoke, objected, and advocated for youth. | Sections VI-VIII |
| 2 | The Commission Youth Council was eliminated while Plaintiff was absent. | Section IX |
| 3 | Plaintiff objected, sought reconsideration, and continued youth programming through District 6. | Section IX |

| | | |
|---|---|---|
| 4 | Restrictions followed involving youth programming, office resources, fundraising, printing, and communications. | Sections IX-XI |
| 5 | Plaintiff objected again, sought independent legal review, and proposed narrower safety-focused alternatives. | Section IX |
| 6 | On August 20, 2026, broader Measures were adopted that now reach the recurring activity Plaintiff continued. | Sections IX-XI |
| 7 | September 30 and October 1 activities create an immediate need for prospective relief. | Section XIV |

**AUTHORITY AND ENFORCEMENT ROADMAP**

| Actor / Body | Authority or Role Shown in Governing Materials | Review / Limitation | Why It Matters Here |
|---|---|---|---|
| Full Commission | Charter rulemaking and legislative authority; adopted the August 20 Measures. | Acts collectively under Charter and law. | Explains source of enactment, but Plaintiff does not sue the full Board. |
| Chairperson / Defendant Bell | Rules identify Chair as administrator/personnel director and assign substantial administrative/resource functions. | Authority varies by provision and is subject to Charter, law, and stated review. | Shows present administrative connection, not merely participation in voting. |
| Chairperson - Youth Safety Policy | "Sole jurisdiction" initially to decide disputes over whether a youth activity is permissible. | Policy states a two-thirds Commission override. | Strongest direct connection between Defendant and threatened prospective enforcement. |
| Administrative Leadership Group | Rule 11 assigns review/enforcement functions affecting certain travel, central, or office funds. | Internal review and full-Commission override provisions apply. | Shows potential consequences and why clarity about decisionmakers matters. |

| | | | |
|---|---|---|---|
| Ethics Board | Existing Ethics Ordinance process for alleged Ordinance violations involving elected officials. | Written complaint, notice, response, hearing, findings. | Relevant comparison when alleged misconduct by an elected official is at issue; not pleaded as exclusive for every dispute. |
| Commission Counsel / Staff | Legal advice, review, administration and implementation functions. | Commission Counsel has distinct appointment/termination provisions; staff acts are not automatically Bell's acts. | Used as evidence of notice, interpretation and implementation where supported by documents. |

## II. JURISDICTION, VENUE, STANDING, AND RIPENESS

9. This Court has federal-question jurisdiction under 28 U.S.C. § 1331 and civil-rights jurisdiction under 28 U.S.C. § 1343 because Plaintiff brings claims under 42 U.S.C. § 1983 and the First and Fourteenth Amendments.

10. Plaintiff seeks declaratory relief under 28 U.S.C. §§ 2201-2202 and temporary and preliminary injunctive relief under Federal Rule of Civil Procedure 65.

11. Supplemental jurisdiction exists under 28 U.S.C. § 1367 over related Michigan and Wayne County Charter claims arising from the same facts and challenged policies.

12. Venue is proper under 28 U.S.C. § 1391 because the challenged governmental acts occurred in Wayne County, Michigan, within this District.

13. Plaintiff has standing because adopted policies directly govern the scheduled September 30 and October 1 activities and threaten administrative, budgetary, travel, or disciplinary consequences if Defendant or the designated enforcement structure concludes that Plaintiff has violated them.

14. The controversy is ripe because the challenged measures are already adopted, the dates are fixed, and Plaintiff has repeatedly sought clarification concerning whether her established program and fundraising may proceed.

15. Plaintiff's internal requests for reconsideration and independent counsel demonstrate notice and good-faith efforts to resolve the dispute; they are not pleaded as an exhaustion prerequisite. See Patsy v. Board of Regents, 457 U.S. 496 (1982).

## III. PARTIES AND DEFENDANT BELL'S ENFORCEMENT ROLE

16. Plaintiff Monique Baker McCormick is an elected Wayne County Commissioner representing District 6 and has served since her election in November 2018. Plaintiff brings this action in her own name because she alleges injury to her own First Amendment rights and seeks prospective relief from governmental burdens directed at her own speech, petitioning, and activities. Her elected office supplies the factual context for the dispute; she does not purport to sue on behalf of Wayne County or the Wayne County Commission. See Bond v. Floyd, 385 U.S. 116, 135-37 (1966) (recognizing First Amendment protection for an elected legislator's speech).

16A. Plaintiff's elected title does not extinguish her individual First Amendment rights. Some challenged speech occurred in legislative proceedings; other speech occurred through her independently established McCormick Report and public commentary. Plaintiff does not contend that every County-funded communication is private speech. She alleges that governmental authority may not be used to impose concrete burdens because of protected speech or petitioning. See Bond, 385 U.S. at 135-37; Thaddeus-X v. Blatter, 175 F.3d 378, 394 (6th Cir. 1999) (en banc); Zilich v. Longo, 34 F.3d 359, 364-66 (6th Cir. 1994).

17. Defendant Alisha Bell is Chairperson of the Wayne County Commission and is sued solely in her official capacity for prospective declaratory and injunctive relief.

18. Plaintiff alleges Defendant is the proper official-capacity defendant for prospective relief because the challenged Measures give the Chairperson a present connection to enforcement. The Youth Safety Policy assigns the Chairperson initial "sole jurisdiction" to decide disputes over whether a youth activity is permissible, subject to the stated override. Rule 7 designates the Chairperson as administrator and personnel director; Rule 11 assigns significant administrative and resource functions; and Rule 12 gives the Chairperson substantial supervisory authority over central Commission personnel, subject to stated exceptions. Rule 11(15) defines the Administrative Leadership Group ("ALG") as the Chairperson, Vice-Chairperson, Vice-Chair Pro Tempore, Chairperson of the Ways and Means Committee, and Chairperson of the Audit Committee. Plaintiff alleges that the Commissioners comprising the ALG also comprise the Rules Committee that considered the challenged Rule amendments. Plaintiff further alleges that Defendant Bell, as Commission Chairperson, possessed authority over the scheduling and agenda of the Rules Committee, as Commission Counsel stated in the July 27, 2026 correspondence described below. Plaintiff therefore alleges that substantially the same institutional leadership participated at multiple stages of the challenged process: determining when the Rules Committee would consider the proposed Measures, developing or advancing those Measures, exercising administrative or enforcement authority under Rule 11, and participating in internal review of decisions made under that Rule. Plaintiff does not allege that overlapping governmental roles are unconstitutional by themselves. She alleges that the concentration of functions is relevant when considered with the retaliatory chronology, disputed notice, individualized application, and threatened administrative consequences alleged here. Plaintiff does not allege that every Commission employee is personally controlled by Defendant or that every act of Commission Counsel is Defendant's act. Commission Counsel, for example,

is appointed and terminated by majority action under Rule 12. Plaintiff relies on staff communications where they show notice, implementation, interpretation, or the administrative mechanism through which the challenged restrictions operated. (Exhibits L-2, L-3, M-6.)

19. Plaintiff also distinguishes discretionary authority from final policymaking authority. Whether an official possesses final governmental policymaking authority is determined by applicable state and local law, and authority subject to meaningful review may differ from final, unreviewable authority. See Pembaur v. City of Cincinnati, 475 U.S. 469, 481-84 (1986); City of St. Louis v. Praprotnik, 485 U.S. 112, 123-27 (1988); McMillian v. Monroe County, 520 U.S. 781, 785-86 (1997). Plaintiff need not allege that Defendant is the final policymaker for every County matter to identify the official whose office is expressly assigned the challenged enforcement role.

20. Plaintiff seeks prospective relief directed to enforcement, not damages for legislative votes. The Supreme Court's functional distinction between legislative activity and enforcement authority supports that separation. See Supreme Court of Virginia v. Consumers Union of the United States, Inc., 446 U.S. 719, 736-37 (1980); Bogan v. Scott-Harris, 523 U.S. 44, 54-55 (1998). Plaintiff does not rely on Defendant's participation in rulemaking alone; she relies on the present enforcement connection created by the challenged Measures and the alleged course of administrative involvement described below.

21. Plaintiff does not seek damages against Defendant personally.

## IV. WAYNE COUNTY CHARTER, RULEMAKING AUTHORITY, AND EXISTING ETHICS PROCESS

22. The Wayne County Charter identifies the County Commission as the County's legislative body and vests it with legislative authority. Charter § 3.111. (Exhibit S.)

23. Charter § 3.114(a) provides that the Commission shall elect a chairperson and other officers and 'shall establish its own rules and procedures.' (Exhibit S.)

24. Charter § 3.114(d) requires Ways and Means and Audit Committees and authorizes the Commission to provide for other committees by resolution. The Charter's compiler comments state that the Charter envisions Commission work being done by committee, where detailed inquiry normally occurs. (Exhibit S.)

25. Charter § 3.115 provides that Commission powers and duties are exercised by ordinance where required by law or the Charter and otherwise may be exercised by resolution; it authorizes the Commission, among other things, to adopt resolutions, appropriate funds, approve contracts, appoint Commission employees within authorized appropriations, and exercise powers granted by law except those prohibited by the Charter. (Exhibit S.)

26. Charter § 3.115(12) expressly addresses removal of a Commissioner for specified causes and requires heightened voting thresholds and, for misfeasance or malfeasance, a fair hearing. Plaintiff does not equate Rule 11 penalties with removal, but alleges this provision is relevant to the Charter's allocation of disciplinary power. (Exhibit S.)

27. Charter § 3.118 addresses non-interference in administrative affairs. Plaintiff does not contend that § 3.118 directly resolves internal Commission administration; she relies on it as evidence that the Charter recognizes defined governmental roles and limits direct administrative interference outside assigned authority. (Exhibit S.)

28. Plaintiff alleges that Charter § 3.114(a) empowers the Commission, as a body, to establish its own rules and procedures. That authority must be read with §§ 3.111, 3.115, 3.118, the finance provisions of Article V, applicable ordinances, and the Constitution. Plaintiff does not contend that the Chairperson lacks administrative authority. Rather, she asks whether rules adopted by

the Commission may lawfully delegate and apply substantive discretionary authority to the Chairperson in a manner that burdens another elected Commissioner's protected speech, petitioning, office resources, or constituent programming. Rules 7, 11, and 12 make that question concrete because they place significant administrative, resource, and central-staff personnel authority in the Chairperson. (Exhibits L-3, S.)

29. The Charter's compiler comments to § 3.111 describe Wayne County as modeled on co-equal branches and distinguish legislation from direct day-to-day supervision. Plaintiff cites those comments as interpretive history only, recognizing that the compilation itself states the comments are not legally authoritative. (Exhibit S.)

30. The Charter's compiler comments also discuss delegation and due-process standards in rulemaking. Plaintiff alleges that the Court should examine whether adequate standards constrain the challenged delegation to the Chairperson and the Administrative Leadership Group. Plaintiff does not contend that combining governmental functions alone establishes a constitutional violation. See Withrow v. Larkin, 421 U.S. 35, 47-55 (1975). Rather, she alleges that the concentration of rule-development, agenda control, administrative enforcement, and internal review in substantially the same leadership structure is relevant to the risk of arbitrary or retaliatory application when considered with the particular chronology alleged here. See Mathews v. Eldridge, 424 U.S. 319, 333-35 (1976). (Exhibit S.)

30A. Plaintiff does not allege that Commission Counsel Felicia O. Johnson is a separate defendant or that every act by Commission Counsel was personally directed by Defendant Bell. Plaintiff alleges, however, that Commission Counsel operated within the Commission's administrative structure while Rule 7 designated Bell as the Commission's administrator and personnel director; Bell repeatedly defended Counsel's role in disputes with Plaintiff; Bell was

copied on or participated in significant challenged communications; and Commission Counsel later disclosed that Dickinson Wright was engaged with Bell's approval to consult on the proposed revisions. Plaintiff therefore pleads Counsel's communications as part of the mechanism through which disputed administrative and legal positions were communicated and implemented, while challenging Bell's own prospective enforcement authority under the August 2026 Measures. See Supreme Court of Virginia v. Consumers Union of the United States, Inc., 446 U.S. 719, 736-37 (1980); Bogan v. Scott-Harris, 523 U.S. 44, 54-55 (1998).

31. The source and scope of final governmental authority are determined by state and local law. See Pembaur v. City of Cincinnati, 475 U.S. 469, 481-84 (1986); City of St. Louis v. Praprotnik, 485 U.S. 112, 123-27 (1988); McMillian v. Monroe County, 520 U.S. 781, 785-86 (1997).

## V. PLAINTIFF BUILT AND OPENLY ADMINISTERED THE COMMISSION YOUTH COUNCIL

32. Plaintiff began developing the Youth Council through her District 6 office in 2019, initially using resources from her own Commissioner office allocation. In 2020, after Plaintiff developed the program, the Commission formally established the Wayne County Commission Youth Council ("WCCYC") through Resolution No. 2020-243. Plaintiff alleges she was not then advised of a Commission rule prohibiting the use of otherwise-authorized office resources to develop the countywide youth program. (Exhibit A, A-1.)

33. The WCCYC was a nonpartisan civic-leadership program providing youth civic education, leadership development, public speaking, community service, advocacy, financial literacy, employment preparation, interaction with elected officials, and participation in public-policy discussions.

34. The program developed substantial governmental, educational, and community participation. Wayne County Probate Court Judge David Perkins administered the oath to Youth Council members; Congresswoman Rashida Tlaib and Detroit City Councilwoman Mary Waters contributed to and supported civic activities; Wayne State University and Michigan State University Extension provided educational programming; and Wayne County Clerk Cathy M. Garrett later partnered with Plaintiff in the District 6 successor program. Plaintiff alleges these facts to show the program's established nonpartisan civic and educational character, not to suggest that any participant endorses this lawsuit.

35. In February 2026, in connection with the National Association of Counties (NACo) Legislative Conference in Washington, D.C., Plaintiff helped bring youth from jurisdictions around the country together for a national youth initiative focused on civic education, leadership, policy engagement, and development of a national youth network and council. Wayne County youth participated with youth from other jurisdictions, and during the 2025 and 2026 Washington, D.C. experiences Youth Council members also engaged with Congresswoman Tlaib's office through events, lunch, and other civic activities. These national activities predated the challenged August 20, 2026 measures.

36. Plaintiff served as administrator/coordinator and developed the program from the ground up. From its early years, Commission Counsel Felicia O. Johnson and members of the Office of Commission Counsel worked with Plaintiff and Commission staff on legal and administrative matters, including forms, permissions, meeting support, and the governmental process through which youth policy proposals were developed and presented. Plaintiff alleges that Counsel's office later participated in developing or interpreting restrictions affecting the recurring program

it had previously helped support, which was one reason Plaintiff repeatedly sought independent legal review.

37. Plaintiff alleges that she used District 6 office resources for the program through approximately 2022, after which a Commission-funded staff position assisted with Youth Council programming and related administrative duties. As the program became more connected to central Commission administration, Plaintiff alleges that disputes over program control, staffing, communications, resources, and functions increased.

38. Plaintiff provided Commissioners schedules and program information, invited participation and suggestions, and alleges that no Commissioner was excluded. She alleges the program was administered openly with Commission staff support.

39. Plaintiff alleges that disputes nevertheless began to intensify concerning applications, essays, logos, printing, books, appointments, vendors, program materials, and day-to-day administration, increasingly overlapping with the operation of her District 6 office.

39A. Plaintiff alleges that throughout the program's operation she used parental permissions, adult supervision, releases and other safety practices appropriate to the activity. She repeatedly asked Defendant and Commission Counsel to identify any actual documented injury, substantiated parent complaint, proven rule violation, or finding of wrongdoing arising from her administration. Plaintiff alleges that none was provided to her before adoption of the 2026 Measures. Plaintiff pleads that absence as part of the causation and pretext chronology, not as proof that government may never adopt prospective safety rules. See Thaddeus-X, 175 F.3d at 394.

## VI. 2022-2023 COMMUNICATIONS DISPUTES: EARLY NOTICE AND INVOLVEMENT

40. On or about January 7, 2022, Plaintiff was informed that further changes were required to a District 6 postcard before it could be sent, including deletion or revision of language concerning a 2022 redistricting listening tour and a direction to focus the communication on subjects Commission leadership considered within the Commission's responsibility. (Exhibit V-1.)

41. On or about January 9, 2022, Defendant communicated that a taxpayer-funded postcard should concern issues within the Wayne County Commission's direct responsibility and requested revisions concerning the legislative update and redistricting content. (Exhibit V-1.)

42. In June 2022, Plaintiff prepared a newsletter concerning the Supreme Court's Roe v. Wade decision. Plaintiff alleges that after multiple revisions involving Commission Counsel and the communications team, the newsletter was delayed until content changes were approved, including concerns that taxpayer funds not be used for an opinion piece. (Exhibit V-2.)

43. Plaintiff does not allege that every content review of a taxpayer-funded communication is unconstitutional. She alleges these events are relevant to a longer chronology of content-based administrative review and to whether later restrictions were motivated by disagreement with her viewpoint or public criticism.

44. On or about May 2, 2023, Plaintiff alleges Commission leadership and counsel discussed Youth Council operations and declined to pay approximately $97.49 for a replacement Youth Council banner after the prior banner was damaged. (Exhibit V-3.)

45. In or about July 2023, Plaintiff alleges Commission Counsel and the communications director identified concerns with a proposed communication, directed deletion of at least one item, and placed printing on hold pending revision. (Exhibit V-4.)

46. In or about October 2023, Defendant Bell invited Plaintiff to a private Zoom meeting at which multiple Commissioners raised concerns about the Youth Council. Before the meeting,

Plaintiff had asked that Commissioners with concerns identify them so she could understand the issues and prepare a meaningful response. Plaintiff alleges that did not occur and that she entered the meeting without advance notice of the specific allegations. Plaintiff objected to the private multi-Commissioner format and raised an Open Meetings Act concern with Defendant Bell and Commission Counsel. Plaintiff recalls Commission Counsel stating, in substance, that the meeting could occur privately so long as no official action or vote was taken. Plaintiff later discussed the meeting in the McCormick Report. She pleads the event as part of the retaliation and notice chronology, not as a separate federal Open Meetings Act claim. (Exhibit V-5.)

47. Plaintiff alleges that after she publicly discussed the October 2023 meeting, Defendant Bell and other Commissioners objected to her disclosure. Plaintiff relies on the event because it shows that Defendant knew Plaintiff was willing to speak publicly about internal governmental disputes and that disagreements about Plaintiff's speech predated the later youth-program restrictions. Plaintiff does not allege that every disagreement with her public communications was unconstitutional.

**VII. 2024 SPECIAL COMMITTEE ON YOUTH AND ADMINISTRATIVE DISPUTES**

48. Plaintiff alleges that in approximately November 2024 Defendant stated, in substance, that if Plaintiff did not cooperate with proposed changes Defendant would "take the Youth Council" and have another commissioner lead it.

49. Commission leadership considered changing the original Youth Council structure so the Chairperson would annually appoint the Commissioner serving as administrator/coordinator. (Exhibit B.)

50. In 2024, Plaintiff was informed that a Special Committee on Youth would be created and that she would serve as Chair while continuing her role in administering the Youth Council.

51. Plaintiff sought clarification from Commission Counsel concerning the authority for the Special Committee and its relationship to the Youth Council and was advised that the Chairperson had authority to create a special committee.

52. On November 20, 2024, Defendant circulated correspondence describing the Special Committee on Youth, thanked Plaintiff for cultivating the Youth Council, described the WCCYC as a Commission creation, and stated that the Chair would appoint the Commissioner serving as coordinator. (Exhibit C.)

53. Plaintiff responded that she welcomed Commissioner input but believed the Special Committee should not run the Youth Council's day-to-day operations and that she intended to preserve the program's original civic mission. (Exhibit C-1.)

54. Defendant represented that the Special Committee would increase Commission involvement and inclusivity without hindering Youth Council activities. Plaintiff alleges she relied on that representation.

## VIII. APRIL AND DECEMBER 2024 SPECIAL COMMITTEE MEETINGS: YOUTH AND PARENTS SPEAK FOR THEMSELVES

55. On or about April 23, 2024, the Special Committee on Youth met. Plaintiff prepared the agenda, Defendant attended, and the Committee discussed Youth Council activities, appointments, and the application essay. Defendant expressed that she did not want an essay requirement as part of the youth application. (Exhibit D-1. – video available Special Committee on the Wayne County Commission Youth Council 4/23/24)

56. Plaintiff expressed need for essay as part of youth application, but Commissioners could waive requirement for their youth appointees. Youth Council members provided public comment supporting the essay component and explaining that participants would later be expected to

develop policy resolutions. Students also supported filling vacancies so qualified youth would not lose opportunities because a district appointment was not made.

57. Plaintiff alleges these comments exemplified the civic participation the Youth Council was designed to teach.

58. Plaintiff sought evening Special Committee meetings so students and working parents could attend, see firsthand government process and share their view point during public comments. She alleges proposed evening meetings were prevented or rejected even when members had indicated availability. (Exhibit C-2.)

59. Plaintiff further alleges Defendant instructed her not to circulate certain proposed amendments or Committee materials to students or parents. (Exhibit C-C 2.1)

60. On or about December 2, 2024, Plaintiff requested outside legal counsel or a second legal opinion concerning disputes over the Special Committee and meeting requirements. (Exhibit M-1.)

61. On December 11, 2024, Plaintiff prepared the agenda for the Special Committee meeting held during school and work hours, students did not attend. The Committee discussed funding/expenses for activities during the program year, including the annual Detroit Tigers activity and proposed Washington, D.C. travel. (Exhibit D and Video available at request Special Committee on the Wayne County Commission Youth Council 12/11/24 - YouTube)

61A. Plaintiff alleges that the December 11 agenda framed the Washington item as discussion and approval of specified program expenses, including approximately $3,000 for travel and lodging for two Youth Council student leaders and one legislative-aide chaperone, together with separate proposed expenses for a Detroit Tigers activity and a Port Authority completion ceremony. The same agenda listed additional Youth Council programming and future meetings.

Plaintiff relies on the agenda to distinguish a funding-approval question from a categorical legal prohibition on privately supported participation and to show that the Youth Council operated as an ongoing civic-education program rather than as a single travel event. (Exhibits D-2, D-3.)

62. Plaintiff alleges the Tigers suite had historically been provided by the Wayne County Executive's office at no cost, and the Committee's vote concerned funding for associated expenses rather than a categorical prohibition on youth attendance.

63. The Committee and Commission subsequent Full board also declined to fund expenses for the proposed Washington, D.C. trip. Parents attended meeting from work by zoom and expressed support, some paid or were willing to pay airfare, and parental consent and release documents were used. (Exhibits E, E-1.)

64. Plaintiff and Defendant in the meeting stated that they both could seek lawful community fundraising support. Defendant later directed Plaintiff cease fundraising and communicated with parents concerning the trip. (Exhibit E-2.)

65. Two students ultimately attended the NACo Legislative Conference in Washington, D.C. Plaintiff alleges the trip furthered the program's civic-education mission. (Exhibit E-3)

65A. The Commission's decision concerned County funding and official Commission authorization for the proposed Washington travel. After County funding was declined, Plaintiff did not cause the denied Washington travel expenses to be paid from County funds. Plaintiff instead raised or obtained outside financial support so participating students could attend without using the travel funding the Commission had declined to provide. Plaintiff does not claim a constitutional entitlement to County-funded travel; she distinguishes a refusal to fund from a separate legal prohibition on otherwise-lawful, separately supported participation. (Exhibits E-5 through E-10.)

65B. Participating parents signed written permission and liability-release materials for the NACo national youth initiative. The form authorized participation in the NACo Legislative Conference and related civic activities; acknowledged voluntary participation and travel by car, air, or other transportation; provided a liability release covering identified organizations, County actors, staff, sponsors, volunteers, and agents; required students to follow adult supervision and instructions; and provided emergency medical authorization. Plaintiff relies on these safeguards to show that parental consent, supervision, travel risk, and emergency planning were addressed, not to contend that a release eliminated every conceivable legal risk. (Exhibit E-9.)

65C. Commission Counsel's January 16, 2025 letter to participating parents stated that the trip had not been authorized as an official WCCYC activity and disclaimed County responsibility, while also stating that the Commission could not prevent parents from personally contributing to the trip and sending their child. The letter characterized the students' participation, and Plaintiff's participation, as personal rather than official County participation. Plaintiff relies on the letter for the narrower proposition that Commission Counsel herself distinguished County authorization and funding from private participation in the underlying civic activity. Plaintiff disputes only the further characterization of the full capacity in which she participated because she also held independent NACo leadership responsibilities. (Exhibit E-8.)

65D. The Youth Council had also participated in government-related travel to Lansing using Commission-supported transportation. Plaintiff does not contend that bus travel to Lansing and air travel to Washington presented identical risks. She alleges that off-site youth travel was not unprecedented and that the program historically addressed travel-related risks through supervision, transportation planning, parental consent, and other safeguards. Plaintiff therefore

sought identification of any Washington-specific safety or legal defect that could not be addressed through neutral safeguards. (Exhibit E-11.)

65E. From the Youth Council's inception, Plaintiff alleges that Defendant Bell was the Chairperson through whom County-funded Youth Council expenditures were authorized and processed. In the program's earlier years, Plaintiff would identify needed items or activities - including books, transportation for the Lansing civic trip, and other program expenses - and Defendant would authorize the expenditure and payment through the Commission's fiscal process. After additional staff were hired, Plaintiff alleges that Defendant required memoranda identifying requested Youth Council expenses before authorization and processing. Plaintiff coordinated the program, but she did not possess unilateral authority to release, issue, or disburse County funds.

65F. Plaintiff alleges that the Youth Council had an annual allocation of approximately $50,000, while actual County expenditures were generally approximately $5,000 to $6,000 per year and never approached the annual allocation. Community partners supplied substantial in-kind support and donations for programming. Plaintiff pleads these facts to show that she used County funds conservatively and that any County-funded expense necessarily moved through the Commission's authorization and fiscal-processing structure. (Exhibit E-13.)

65G. Plaintiff further alleges, subject to documentary confirmation in the fiscal record, that after the Commission declined funding associated with a Detroit Tigers Youth Council activity, Defendant nevertheless authorized or caused the related expense to be processed or reimbursed through the Commission's fiscal process. Plaintiff offers the Tigers matter as a comparator to the later suggestion that Plaintiff acted fiscally or procedurally improperly in connection with Washington. Plaintiff alleges that she did not use the Washington travel funds the Commission

declined and instead obtained outside support. She therefore asks that any claimed procurement violation be tied to a specific transaction, rule, and decisionmaker rather than to generalized fiscal concerns. (Exhibit E-14, if confirmed by fiscal records.)

## IX. PLAINTIFF OBJECTED, CONTINUED THE PROGRAM, AND BROADER RULES FOLLOWED

66. The documentary record also shows that Plaintiff repeatedly tried to use the Special Committee process rather than avoid it. On October 18, 2024, Plaintiff requested travel authorization and support for Youth Council officers to attend the 2025 NACo Legislative Conference and described parental consent, chaperoning, civic activities, and an estimated cost. On October 22, Defendant responded that the proposal would be a good discussion for the next WCCYC committee meeting and asked when that meeting would be scheduled. Plaintiff alleges this exchange shows Defendant had advance notice of the proposed Washington civic-education activity that was later criticized during the August 7, 2025 reconsideration discussion. (Exhibits E, E-1.)

67. Plaintiff then sought an evening Special Committee meeting so students and working parents could participate. Defendant rejected an evening meeting and directed that the Committee meet during regular business hours and in person. Plaintiff responded that she had a quorum of Commissioners willing to accommodate a 6:00 p.m. Zoom meeting and explained that student participation was central to the Youth Council's civic mission. Plaintiff alleges this disagreement is relevant because she was affirmatively trying to convene the Committee and allow public and student participation before later restrictions and elimination. (Exhibit C-2.)

68. On December 23, 2024, Plaintiff wrote Defendant requesting immediate action and clarification concerning Youth Council funding and procurement after delays in obtaining

previously requested program items. Plaintiff stated that delays were affecting programming and asked for a written process and timeline. Defendant responded that, after the items had been approved by the body, she would authorize them and stated that the quality of Youth Council programming would not be compromised. Plaintiff alleges this exchange documents Defendant's direct administrative involvement in Youth Council resources before the later elimination. (Exhibits D, E.)

69. On December 27, 2024, Plaintiff requested outside legal counsel or an independent legal opinion concerning the Youth Council and District 6 because she had lost confidence in Commission Counsel's impartiality on the disputed issues. On January 10, 2025, Defendant denied that request, defended Commission Counsel's role, stated that she had budgeted funds for approved WCCYC activities, and explained her view that outside counsel was used when expertise or workload required it, not because a Commissioner disagreed with Commission Counsel's interpretation. Plaintiff pleads the exchange as protected petitioning, notice, and chronology, not as a separate constitutional entitlement to County-funded counsel. (Exhibits M-1, T.)

70. On June 17, 2025 - one month before the Youth Council was eliminated - Plaintiff emailed Defendant Bell and Commissioner Kinloch asking to meet about the Youth Council budget for the upcoming fiscal year. Plaintiff stated that she wanted to explore expanding Council activities and that she would soon schedule a Special Committee on Youth meeting to determine the matter. Defendant responded the same day that the special boards had been under budget and that she planned to keep $150,000 divided among the Youth Council, Women's Council, and Ethics-related allocation, with $50,000 for each. Plaintiff alleges this exchange is significant because she was actively attempting to convene the Special Committee and plan the Council's next year,

while Defendant was discussing continued Youth Council funding, shortly before the July 17 elimination. (Exhibit E-4.)

71. Plaintiff alleges that no Special Committee meeting was permitted to occur before the July 17, 2025 vote eliminating the Youth Council. She relies on that sequence - her documented effort to schedule Committee consideration, Defendant's June 17 funding response, the absence of an intervening Special Committee review, and the July 17 elimination - as circumstantial evidence in the retaliation chronology. Plaintiff does not ask the Court to infer Defendant's subjective motive from the sequence alone.

72. Beginning in or about January 2025, Plaintiff continued to object to proposed amendments to the Commission Rules that she believed expanded the authority of the Chairperson over individual Commissioners' offices, resources, allocations, travel, and governmental activities. Plaintiff communicated those objections to Commission Counsel Felicia O. Johnson and members of the Rules Committee and characterized the proposed expansion as overreaching and inconsistent with the allocation of authority in the Wayne County Charter. (Exhibit M-1.)

73. The proposed Rule 11 amendments were thereafter approved notwithstanding Plaintiff's objections. Plaintiff alleges these earlier amendments are relevant because they preceded the later Youth Council dispute and show that Plaintiff challenged expansion of the Chairperson's administrative authority before the Commission-created Youth Council was eliminated. (Exhibit M-2.)

74. On July 17, 2025, while Plaintiff had an excused absence associated with official duties at the NACo Annual Conference, the Commission adopted Resolution No. 2025-492 eliminating the Commission-created Youth Council and providing that no 'similar activities' would be permitted. Plaintiff alleges that the proposed elimination was not separately identified on the

published agenda, that she received no advance notice that elimination would be considered, and that the matter had not first been reviewed by the Special Committee on Youth, which she chaired. Plaintiff pleads the manner and timing of the action, together with the preceding disputes and subsequent restrictions, as circumstantial evidence relevant to her First Amendment retaliation claim. (Exhibits F, G.)

74A. After later reviewing the publicly available audiovisual recording of the July 17 meeting, Plaintiff observed that the Youth Council elimination was introduced during the meeting rather than appearing as a separately identified item on the published agenda. Plaintiff observed paper copies being distributed to Commissioners for review during the meeting and did not observe the written measure being made available to the public before the vote. Defendant Bell caused or facilitated the matter being taken up and then abstained from the vote. Plaintiff does not presently plead that these facts automatically render the resolution void; she pleads them as evidence of notice, process, Bell's personal involvement, and the retaliation chronology. Plaintiff requests leave, to the extent required, to supplement the Rule 65 record with the July 17 audiovisual recording, complete agenda, journal, and contemporaneous media coverage. (Exhibit G, supplemental audiovisual exhibit.)

75. Plaintiff's underlying program records identify Resolution No. 2020-243 as the resolution establishing the Commission Youth Council. Resolution No. 2026-619, however, recites that Resolution No. 2025-492 rescinded Resolution No. 2023-243. Plaintiff pleads this as an objective record discrepancy and does not ask the Court to silently reconcile the two numbers. (Exhibits A, F, L-1.)

76. Plaintiff formally requested in writing that a resolution rescinding Resolution No. 2025-492 be placed on the August 7, 2025 full-board agenda. Plaintiff alleges that the rescission was not

listed on the published agenda at all. She raised the matter under New Business, and the official journal states that Defendant Bell 'allowed Commissioner Baker McCormick to walk on a resolution,' without reflecting that Plaintiff had previously requested its placement on the agenda. During the discussion, allegations concerning Plaintiff's administration of the Youth Council were presented, including information displayed during the meeting that Plaintiff alleges had not been provided to her beforehand and for which she had no meaningful opportunity to prepare a response. Plaintiff further alleges that Defendant Bell's requested remarks were memorialized in the journal while Plaintiff's substantive response was not similarly preserved. Plaintiff pleads these circumstances not as a freestanding constitutional right to a particular journal entry, but as part of the documented course of differential treatment following her protected speech and petitioning. (Exhibits H-1 through H-5.)

77. After the Commission discontinued its own Youth Council, Plaintiff continued youth civic programming through her District 6 office and, in approximately August 2025, established the Wayne County Civic Youth Council in partnership with Wayne County Clerk Cathy M. Garrett, an independently elected County official. (Exhibit I.)

78. Commission Counsel thereafter interpreted Resolution No. 2025-492 to prohibit comparable recurring youth programming through an individual Commissioner's office and to prohibit use of Commission resources for that programming. Plaintiff disputed that interpretation, asserted that the successor Civic Youth Council was distinct from the former Commission-created body, and repeatedly requested identification of the legal authority supporting the restriction. (Exhibits K-1, K-2.)

79. Plaintiff alleges that the restrictions then reached ordinary District 6 office operations. Plaintiff requested business cards for a District 6 staff member whose title or functional

designation included the word 'Youth.' Commission Counsel advised Plaintiff that the business cards would not be paid from Plaintiff's District 6 office allocation because of the youth-related designation. Plaintiff alleges that the interpretation of Resolution No. 2025-492 was thus being used to deny an ordinary office expenditure from her allocated resources because her office continued identifying and performing youth-engagement work. Plaintiff pleads this concrete administrative consequence as part of the adverse-action and causation evidence supporting her First Amendment retaliation claim. (Exhibits J-1, K-1 through K-4.)

80. Plaintiff repeatedly requested independent legal review because Commission Counsel had participated in interpreting and defending the restrictions Plaintiff was challenging. Plaintiff does not allege an unconditional constitutional right to County-funded outside counsel; the requests are pleaded as protected petitioning, notice of the dispute, and evidence that Plaintiff sought clarification before litigation.

81. When independent County-funded review was not provided, Plaintiff retained private counsel, Allison Folmar, at her own expense. On May 8, 2026, Attorney Folmar emailed Commission Counsel Felicia O. Johnson, copying Chairperson Bell, and transmitted a memorandum concerning Plaintiff's District 6 youth programming, Rule 11, office-budget authority, and outside counsel. The memorandum expressly requested discussion in an effort to resolve the identified issues. Plaintiff relies on the transmitted memorandum and related nonprivileged transmittal correspondence, but does not intend to waive privilege as to undisclosed communications between Plaintiff and her privately retained counsel. (Exhibit M-3.)

82. The May 8 memorandum placed Commission Counsel and Chairperson Bell on written notice that Plaintiff was challenging, among other things, the scope of the Chairperson's authority, restrictions on Plaintiff's office allocation for youth programming, the interpretation of

Resolution 2025-492, Rule 11, and the need for independent legal advice where Plaintiff alleged a conflict. The memorandum further requested relief directed to those same subjects. (Exhibit M-3.)

83. On May 15, 2026, Commission Counsel responded directly to Attorney Folmar and stated: 'As legal counsel for the Commission, my office represents all Commissioners, including Commissioner Baker McCormick, in their official capacities, this includes the retention of outside counsel.' Commission Counsel further stated that the May 8 communication had been 'shared ... appropriately' and that she anticipated the Commission would meet to discuss the matter. Plaintiff pleads this statement for its actual terms and does not characterize it as an admission of personal representation. (Exhibit N.)

On August 5, 2026, Commission Counsel wrote Plaintiff's privately retained attorney and again stated that Commission Counsel's office represents Commissioners in their official capacities "including the retention of outside counsel." The letter cited Charter § 3.120 and Outside Legal Counsel Ordinance § 49-1, stated that an individual Commissioner was not authorized to unilaterally retain outside counsel in her official capacity, and stated that County funds would not pay or reimburse Plaintiff's privately retained counsel. Defendant Bell and all Commissioners were copied. Plaintiff relies on this letter for the contrast with the later-disclosed June 22 Dickinson Wright engagement "with approval of Chairwoman Bell," while recognizing that the documents may involve different legal mechanisms and that the Court must determine the governing authority. (Exhibits N-2, N-3 and T.)

84. On July 27, 2026, the day before the July 28 Rules Committee meeting, Commission Counsel emailed all Commissioners regarding Attorney Folmar's May 8 communication. Counsel described that communication as concerning 'the authority of the chair, the use of funds

for youth activities, and the ability to retain outside counsel,' and stated that matters related to it were anticipated to be discussed at the Rules Committee meeting the following morning. (Exhibit M-4.)

85. At approximately 3:44 p.m. on July 27, Plaintiff responded in writing. She stated that she had not received a substantive written response to the legal and factual issues she had raised, requested Commission Counsel's complete written response, and requested any legal opinions, memoranda, presentations, or other documents intended to be relied upon or presented at the July 28 meeting. Plaintiff further requested postponement if those materials could not be provided in advance so that Commissioners, and particularly Plaintiff as the Commissioner directly affected, could prepare an informed response. (Exhibit M-5.)

86. At approximately 11:04 p.m. on July 27, Commission Counsel responded by listing prior memoranda and email exchanges dating from February 2024 through May 2026 and disputing Plaintiff's assertion that her concerns had not been answered. Counsel reiterated that her office represented all Commissioners in their official capacities, stated that the Commission Chairperson schedules Rules Committee meetings and determines agendas, and stated that Plaintiff had not been deprived of opportunities to participate. Plaintiff alleges that this response did not transmit the operative proposed Rules, resolution, or Youth Safety Policy she had requested before the July 28 meeting. Plaintiff further alleges that Defendant's agenda and scheduling role is relevant because Defendant's involvement was not limited to a legislative vote: the Chairperson could determine when the Rules Committee would consider the proposed Measures, later approved the outside-counsel consultation concerning those Measures, and under the Measures ultimately adopted received substantial administrative and enforcement responsibilities. (Exhibit M-6.)

87. The July 28 Rules Committee thereafter considered matters affecting the same subjects identified in the May 8 memorandum and July 27 correspondence and voted to approve the measures. On July 29, 2026, Acting Clerk Pamela Fordham circulated 'the documents from the Special Committee on Rules meeting.' Later that day, Commission Counsel circulated a corrected version and reattached the other documents. Plaintiff alleges these post-meeting transmissions are relevant to her contention that the substantive package was not provided to her sufficiently in advance of the July 28 discussion. (Exhibit M-7.)

88. Following the July 28 meeting, Plaintiff continued to seek a factual and legal basis for the restrictions. In an August 10, 2026 written request, Plaintiff asked for formal review and written findings identifying any actual rule, ordinance, policy, procurement requirement, law, documented harm, litigation, claim, or other demonstrable injury arising from her tenure as Youth Council Chair, and asked the Commission to distinguish proven violations from hypothetical, potential, anticipated, or after-the-fact concerns. (Exhibit M-8.)

89. Plaintiff alleges this chronology is relevant to retaliation because she opposed expansion of the Chairperson's authority, challenged elimination and interpretation of the Youth Council restrictions, continued youth programming, publicly discussed the controversy, sought independent review, retained counsel, and continued advocating for proactive youth services before the restrictions became progressively more specific and enforceable.

90. On August 18, 2026, Commission Counsel circulated revised Rules, the proposed reaffirming resolution, the Youth Safety Policy, and related materials for consideration before the August 20 full-board meeting. Plaintiff responded the same day. She acknowledged revisions she considered improvements, including removal of proposed $500 fines and addition of appeal protections, but continued to object to restrictions on recurring district youth programming, the

single-day limitation, fundraising, transportation, office-resource restrictions, and discretionary enforcement. Plaintiff proposed narrower alternatives designed to preserve youth-safety protections while permitting lawful recurring district programming. (Exhibits M-9, M-10.)

91. Plaintiff's August 18 proposals included allowing lawful district youth programs; permitting Commissioners to work together; narrowing 'similar activities'; allowing recurring programs; retaining background checks, parental consent, supervision, and the Rule of Three without a categorical recurring-program ban; removing the single-day limit; limiting Chairperson/Counsel discretion; protecting equal base allocations; replacing the 'public confidence' standard; creating a defined youth-activity review process; permitting safe transportation; and permitting lawful sponsorships and partnerships. (Exhibit M-10.)

92. At approximately 9:27 p.m. on August 19, 2026, the evening before the full-board vote, Commission Counsel responded to Plaintiff's August 18 request. Counsel stated that she was reviewing several other requests from Plaintiff concerning formal findings, outside counsel, independent legal review, and Commission Counsel operations. Counsel addressed Plaintiff's proposed amendments and stated that 'a resolution, rule, policy or procedure cannot empower an individual commissioner to create a council, commission, board, committee, organization, association, program or group, such as the Civic Youth Council.' Counsel also transmitted a draft substitute or alternative resolution. (Exhibit M-11.)

93. Plaintiff alleges the August 19 statement is significant to standing, ripeness, notice, and causation because it expressly identified Plaintiff's Civic Youth Council as an example of the type of program Commission Counsel believed an individual Commissioner could not create. Plaintiff does not allege that Commission Counsel's legal opinion itself is a federal constitutional violation.

94. Plaintiff alleges that the progression is significant: disputes that began with communications and office materials expanded into Youth Council administration, office resources, and Rule 11, and ultimately became formal restrictions governing recurring youth activity, fundraising, and enforcement. Throughout that progression, Plaintiff alleges that Bell's asserted administrative authority and Commission Counsel's legal interpretations repeatedly operated together; the resulting August 2026 structure then returned initial youth-activity permissibility decisions to Bell.

95. On August 20, 2026, the Commission adopted Resolution Nos. 2026-618, 2026-619, and 2026-620. Resolution No. 2026-618 approved amended Rules; Resolution No. 2026-619 reaffirmed and defined restrictions concerning 'similar activities'; and Resolution No. 2026-620 adopted the Youth Safety Policy. (Exhibits L-1 through L-3.)

95A. The face of each August 20 Measure identifies Bell as the sole sponsoring Commissioner. Plaintiff alleges that no other Commissioner is listed as sponsor or cosponsor on Resolution Nos. 2026-618, 2026-619, or 2026-620. By contrast, Plaintiff alleges the 2020 resolution establishing the Commission Youth Council reflected sponsorship by all fifteen Commissioners. Plaintiff offers that contrast as circumstantial evidence concerning the origin and development of the challenged Measures, not as a claim that sponsorship itself violates the Constitution. See Bogan, 523 U.S. at 54-55; Consumers Union, 446 U.S. at 736-37. (Exhibits A, L-1 through L-3.)

95B. On August 25, 2026, Plaintiff advised Defendant that District 6 staff member Ariel Brantley preferred to work directly with Michael Manion on communications matters and represented that both employees were comfortable with that arrangement. Defendant responded that she would take the request under consideration and directed that Brantley continue working with another Communications staff member unless and until Defendant approved the change.

Plaintiff pleads this incident as part of the continuing administrative-control chronology, not as a standalone constitutional violation. (Exhibit K-4.)

Plaintiff repeatedly sought independent outside legal review because she opposed the proposed Measures and questioned their legality, but her request was ultimately presented to the full Commission and was not approved. On September 2, 2026, Plaintiff learned that Commission Counsel had already engaged Dickinson Wright on June 22, 2026, 'with approval of Chairwoman Bell,' to provide consultation concerning the proposed revisions before their August 20 adoption. Plaintiff does not allege what Dickinson Wright concluded because the resulting advice, findings, scope of review, and conclusions have not been provided to her. Plaintiff alleges the contrast is significant to the retaliation chronology: the Commissioner challenging the Measures was denied the independent legal review she requested, while outside legal consultation was obtained concerning the Measures with Defendant's approval. Plaintiff pleads this as evidence of differential governmental process surrounding her protected objections, not as a separate constitutional entitlement to County-funded counsel. (Exhibits N-1 through N-3 and T.)

96. Plaintiff alleges that before the September 3 vote she had not been provided documentation describing the questions presented to Dickinson Wright, the scope of the consultation, any written analysis, conclusions, or recommendations, and she had not been consulted concerning the issues directly affecting her established Civic Youth Council. Plaintiff further alleges that she was not informed on June 22, 2026, or before the August 20 vote that Dickinson Wright had been engaged to consult concerning the proposed revisions, despite her repeated requests for independent legal review of the same disputed subjects. Plaintiff first learned of that engagement through Commission Counsel's September 2 disclosure. Plaintiff does not allege that every privileged consultation with outside counsel had to be disclosed to her, does not ask the Court to

infer the substance of any privileged Dickinson Wright communication, and relies only on the disclosed fact, timing, asserted existence of the consultation, lack of contemporaneous notice to her, and differential process surrounding her own requests for independent review. Plaintiff alleges this disparity is relevant to notice, causation, Defendant's personal involvement, and whether governmental resources and procedures were administered differently after Plaintiff opposed and petitioned against the Measures. (Exhibit N-2.)

97. On September 3, 2026, after Plaintiff had repeatedly requested independent outside counsel from Defendant, Commission Counsel, and the Commission, the request was presented to the full Wayne County Commission and was not approved. (Exhibit N-1.)

98. After the August 20 rule changes, Plaintiff pursued the internal clarification and independent-review avenues reasonably available to her: she requested clarification of the new restrictions, asked whether her pre-existing program could continue, requested identification of potential repercussions, and sought independent outside counsel. Those avenues did not produce an independent legal opinion before the September 30 and October 1 deadlines. Plaintiff does not plead administrative exhaustion as a jurisdictional prerequisite to her federal claims. See Patsy v. Board of Regents, 457 U.S. 496, 500-01, 516 (1982).

99. The September 3 result did not repeal, suspend, narrow, or otherwise resolve the challenged August 20 enactments. No independent attorney was retained to advise Plaintiff whether those enactments apply to the September 30 Foundation fundraiser, the October 1 Civic Youth Council meeting, the pre-existing recurring program, or the Rule 11 and Administrative Leadership Group enforcement structure.

100. As of filing, four questions Plaintiff raised remain unresolved: (1) whether the October 1 meeting qualifies as a permitted single-day youth activity even though it begins the previously

established 2026-2027 Civic Youth Council; (2) if the August 20 restrictions apply to a program established and recruiting students before August 20, what legal authority and specific provision permits application to that existing program; (3) what specific law prohibits an individual Commissioner from using otherwise-authorized office resources for lawful recurring civic, educational, or leadership programming for youth constituents; and (4) what legal authority permits the Chairperson and Administrative Leadership Group to determine and impose financial or administrative consequences against an elected Commissioner, and how that authority relates to Wayne County's existing Ethics Ordinance and Ethics Board.

100A. In a later written response, Commission Counsel stated that concerns regarding procurement or legal compliance had previously been brought to Plaintiff's attention and referred Plaintiff generally to prior communications, stating that because Plaintiff had participated in those communications she 'should have the documents and basis requested.' Counsel also relied on the July 17, 2025 action and the position that later District 6 youth programming was prohibited. Plaintiff alleges that the response did not identify a particular procurement transaction, invoice, County disbursement, contract, purchase order, or specifically adjudicated procurement violation committed by Plaintiff, and did not identify a documented injury to a participant. (Exhibit X-2.)

100B. Plaintiff alleges that she did not possess unilateral authority to issue County payments or bypass the Commission's fiscal-processing system. Any County expenditure required processing through the officials and administrative systems empowered to release Commission funds. Plaintiff therefore disputes any implication that generalized fiscal or procurement concerns, without identification of a particular unauthorized County expenditure attributable to her,

establish wrongdoing. She accepts neutral procurement and accounting requirements and asks that any alleged violation be identified with specificity.

100C. Plaintiff further alleges that she could not independently authorize or process County-funded Youth Council purchases. Her practice was to identify needed expenses to Defendant Bell and, later, to submit memoranda for requested expenses; Defendant, as Chairperson, would authorize and cause approved expenses to move through the Commission's payment process. Plaintiff therefore alleges that any assertion of a procurement defect must identify what Plaintiff herself was legally required and empowered to do, what specific transaction allegedly bypassed that process, and how Plaintiff could have caused an unauthorized County disbursement when she did not control the release of funds. Plaintiff has repeatedly requested that specificity and alleges that no adjudicated procurement violation has been identified to her. (Emphasis added.)

**ESCALATION ROADMAP - SELECTED DOCUMENTED EVENTS**

| Date | Plaintiff activity / protected objection | Response or event that followed | Relevance alleged |
|---|---|---|---|
| Oct.-Dec. 2024 | Sought youth travel, evening Committee participation, supplies, and independent legal review. | Meeting/time restrictions, resource disputes, outside-counsel disagreement. | Shows early notice and direct administrative involvement. |
| Jan. 2025 | Objected to expanding Rule 11 / Chair authority and communication restrictions. | Rule changes and administrative disputes continued. | Protected objections predate Youth Council elimination. |
| June 17, 2025 | Requested budget-planning meeting and stated she would schedule Special Committee review. | Bell discussed $50,000 Youth Council allocation; no Special Committee meeting occurred before July 17. | Documents attempted use of Committee process immediately before elimination. |

| | | | |
|---|---|---|---|
| July 17-Aug. 7, 2025 | Youth Council eliminated while Plaintiff absent; Plaintiff sought rescission and publicly objected. | Reconsideration dispute and allegations concerning administration followed. | Central adverse event and protected response. |
| Aug. 2025-2026 | Continued District 6 Civic Youth Council and sought legal authority / independent review. | Calendar, printing, title, resource, fundraising and program restrictions followed. | Connects continuation and petitioning to later restrictions. |
| Aug. 19-20, 2026 | Proposed narrower safety-focused alternatives; continued objecting. | Counsel expressly referenced "Civic Youth Council"; Measures adopted next day. | Notice, fit, timing, and ripeness. |
| Sept. 2-3, 2026 | Continued seeking independent review. | June 22 Dickinson Wright engagement with Bell approval disclosed; Plaintiff request not approved. | Bell involvement and differential-treatment chronology; no allegation Dickinson Wright approved Measures. |

## X. PUBLIC COMMUNICATIONS AND THE AUGUST 20 OFFICIAL RECORD

101. Plaintiff has long communicated with constituents through the McCormick Report and also discusses public affairs through Chew On This Detroit. She used publicly available Commission recordings so residents could review governmental proceedings for themselves rather than rely solely on her description of events. (Exhibits U-1, U-2.)

102. Plaintiff alleges Commission and committee meetings have routinely been recorded or otherwise made publicly available since approximately 2020 or 2021, making recordings important to her public reporting and documentation of governmental action.

103. Plaintiff publicly opposed the August 20, 2026 measures and alleges that her remarks explained her constitutional, Charter, and policy objections to expansion of the Chairperson's authority and restrictions on continuing youth programming.

103A. Plaintiff's August 20 remarks were themselves protected activity. She objected to restrictions on recurring youth programming, expansion of Chairperson authority, office-resource consequences, fundraising restrictions, and the concentration of initial enforcement authority. The First Amendment protects elected legislators when speaking on matters of public concern. See Bond, 385 U.S. at 135-37. Plaintiff alleges the later treatment and preservation of the official record is relevant because those remarks document contemporaneous protected opposition immediately before adoption of the Measures.

104. In late August 2026, Plaintiff requested the audiovisual recording of the August 20 full-board meeting. Plaintiff was advised that the meeting 'didn't record.' Plaintiff alleges that this is unusual in light of the Commission's practice of maintaining meeting recordings. Plaintiff does not presently allege that Defendant or any other person intentionally destroyed, removed, suppressed, or concealed the recording. (Exhibit L-4.)

105. Commission Rule 16 expressly designates the journal as "the only official record of the proceedings of the Commission." It requires the Clerk to maintain an accurate journal, prepare a proposed journal within eight business days, and use a formal correction process under which corrections are approved by the Commission and an amended journal shows both the original entry and the correction. (Exhibit L-3, Rule 16.)

106. Because the August 20 audiovisual recording was reported unavailable, the Rule 16 journal became the principal official Commission record against which the events of that meeting could be documented. Plaintiff alleges that the journal does not reproduce the substance of her constitutional, Charter, and policy objections. Plaintiff does not allege that Rule 16 requires a verbatim transcript or that any person intentionally caused the recording to become unavailable;

she pleads these circumstances as relevant to notice, contemporaneous objection, and preservation.

107. At the September 3, 2026 full-board meeting, Plaintiff again raised the unavailable August 20 recording and requested that her August 20 comments and objections be added to or reflected in the August 20 journal through the correction process. Plaintiff recalls that Defendant Bell also addressed the missing recording. During the discussion, Commission Counsel Felicia O. Johnson intervened and conferred with the Chairperson. The Chairperson then stated, in substance, that the August 20 journal would not be amended to include Plaintiff's remarks and that Plaintiff's comments concerning the matter would instead be included in the September 3 record. Plaintiff pleads this sequence as relevant to preservation and documentation of her contemporaneous objections, not as proof of intentional suppression or concealment.

107A. On September 14, 2026, Acting Commission Clerk Pam Fordham advised Plaintiff by email that the September 3 journal would be posted by Public Information staff after it was approved at the next full-board meeting. Plaintiff therefore does not allege that the September 3 journal was intentionally withheld. She alleges that, as of September 14, the journal was not yet publicly available even though it had particular significance because Plaintiff had been told that her objections concerning the August 20 record would be reflected in the September 3 proceedings. Plaintiff requests preservation of the proposed journal, approved journal, revisions, and corresponding audiovisual record. (Exhibit L-6.)

108. Plaintiff requests preservation of all remaining recordings, audiovisual files, drafts, metadata, agendas, journals, proposed journals, minutes, written remarks, vote explanations, communications, Rules Committee materials, and staff communications relating to the July 28

and August 20 proceedings and the development, adoption, interpretation, or enforcement of the challenged measures.

108A. On or about September 11, 2026, after Plaintiff had requested County records maintained by other offices and custodians, Commission Counsel directed Plaintiff to search broadly for Youth Council records and requested the account and passwords needed to access the Youth Council Gmail account. Plaintiff sought clarification whether the request concerned her own FOIA request or a separate requester and declined to provide account passwords while preserving potentially responsive records. Commission Counsel's same communication expressly instructed Plaintiff to preserve youth-program records and the August 20 recording. Plaintiff renewed her reciprocal request that County-controlled emails, texts, recordings, drafts, journals, metadata, backups, audit logs, and related electronically stored information be preserved. Plaintiff pleads this as a preservation and chronology fact, not as a separate FOIA or constitutional claim. (Exhibit ___.)

## XI. THE AUGUST 2026 MEASURES NOW REACH THE ACTIVITY PLAINTIFF CONTINUED

109. Resolution No. 2026-619 defines 'similar activities' to include a youth council, commission, board, committee, organization, association, program, youth group, and/or the assembly of youth to meet or participate in an activity more than once. (Exhibit L-1.)

110. Resolution No. 2026-619 further restricts an individual Commissioner from using identified County funds and resources, including legislative aides, email, telephone, videoconferencing, computers, printers, paper, mailings, and office allocations, to establish or fund a covered youth group or activity; it also restricts official County designations/logos and official-capacity fundraising for a covered youth group or activity. (Exhibit L-1.)

111. The resolution contains a single-day exception subject to stated conditions. Plaintiff alleges her October 1 start of an ongoing Civic Youth Council does not fit the single-day structure because it begins a recurring program.

112. The Youth Safety Policy adopted through Resolution No. 2026-620 applies to youth activities created, organized, sponsored, hosted, implemented, operated, or supervised by the Commission and/or a Commissioner. It requires, among other things, that a permitted activity further a Wayne County public purpose, be completed within a single day, be held in Wayne County, and be submitted to Commission Counsel for review before proceeding. (Exhibit L-2.)

113. The Policy states that when a dispute arises over whether a youth activity is permissible, the Chairperson has 'sole jurisdiction' to decide the dispute in the first instance, subject to a two-thirds Commission override. (Exhibit L-2.)

114. The Policy states that a Commissioner who violates it will be subject to Rule 11(10) and Rule 11(11), together with other appropriate action permitted by rule, policy, or law. In the final Rules supplied to Plaintiff, Rule 11(10) concerns professional-services contracting and Rule 11(11) concerns coordination of an audit, while censure and funding consequences appear separately in Rule 11(13)-(15). Plaintiff pleads this as an objective cross-reference discrepancy relevant to notice and enforcement; she does not ask the Court to rewrite the enactment. (Exhibits L-2, L-3.)

115. The final Rules also show the mechanism of prospective enforcement. Rule 7 names the Chairperson administrator and personnel director; Rule 11 gives the Chairperson significant administrative and allocation authority and provides separate censure, travel, and non-base funding consequence procedures; and Rule 12 gives the Chairperson substantial personnel authority over central Commission staff, subject to stated exceptions. Plaintiff relies on these

provisions to show how challenged restrictions may be implemented through Commission administration, not to argue that the Chairperson has no lawful administrative authority. (Exhibit L-3.)

116. Plaintiff accepts reasonable and neutral child-safety, parental-consent, background-check, procurement, accounting, ethics, and other generally applicable requirements. She challenges retaliatory, viewpoint-based, vague, or ultra vires application of the identified provisions to her established program and protected advocacy.

116A. Plaintiff further alleges that recurring youth programming exists elsewhere in Wayne County government, including within the Executive branch, while the challenged Commission Measures impose a categorical single-day limitation on youth activity organized or operated by a Commissioner. Plaintiff recognizes that the Executive and Commission are different branches with different powers and are not necessarily similarly situated for every Equal Protection purpose. She pleads the comparison as relevant to whether recurring youth programming itself creates the asserted safety or liability concern and to the fit between the stated justification and the Commission's chosen restriction.

116B. Plaintiff also alleges that recurring Commission constituent programming directed to other populations, including seniors and veterans, is not facially subjected by these Measures to the same one-day limitation applicable to youth programming. To the extent discovery identifies materially similarly situated actors or programs intentionally treated differently without a rational basis, Plaintiff preserves the issue recognized in Village of Willowbrook v. Olech, 528 U.S. 562, 564 (2000). Plaintiff does not presently allege that the County Executive and an individual Commissioner are identical comparators, and she does not rely on a class-of-one theory as the principal basis for relief.

116C. Plaintiff's challenge to the one-day limitation is likewise not based on a generalized claim that federal substantive due process constitutionalizes every policy disagreement. She relies primarily on the First Amendment, fair-notice, and Charter theories pleaded here and offers the apparent mismatch between the stated safety/liability concerns and a categorical recurring-program restriction as evidence relevant to rationality, neutrality, and pretext.

## XII. ATTORNEY-GRIEVANCE PROCEEDING AS LIMITED CHRONOLOGICAL CONTEXT

117. Plaintiff filed a Request for Investigation with the Michigan Attorney Grievance Commission concerning Commission Counsel Felicia O. Johnson, based on alleged conflicts of interest and professional-responsibility concerns arising from Johnson's asserted representation of Plaintiff while also serving as Commission Counsel. The matter was assigned AGC File No. 26-1909.

118. By letter dated August 20, 2026, the grievance was closed at the screening stage under MCR 9.112(C)(1)(a). Plaintiff is pursuing the review procedure available under Michigan law.

119. Plaintiff does not offer the grievance, its dismissal, or any review proceeding as proof that Defendant violated the Constitution or that Johnson committed professional misconduct. The grievance is pleaded only as part of the chronology showing that Plaintiff contemporaneously raised conflict concerns and sought independent review before and during the challenged rulemaking.

## XIII. THE RETALIATION CHRONOLOGY

120. Plaintiff alleges a continuous chronology of protected advocacy followed by increasingly specific governmental burdens. Beginning at least in 2022, Bell's Chairperson authority and Commission Counsel's institutional legal role repeatedly intersected in disputes over Plaintiff's

constituent communications, office materials, Youth Council administration, Rule 11, office resources, fundraising, and recurring youth programming. Plaintiff alleges that this recurring mechanism enabled restrictions to be communicated or implemented through Counsel while ultimate administrative authority remained with Bell.

120A. Plaintiff alleges that Commission Counsel's repeated involvement is relevant because Johnson asserted that her office represented all Commissioners in their official capacities, yet Plaintiff experienced Counsel's advice and administrative communications as consistently supporting the positions advanced by Defendant Bell in the disputed matters. Plaintiff does not ask the Court to infer an attorney-client or agency relationship beyond the governing Charter, Rules, ordinances, and documented communications, and she does not allege that every communication from Johnson was personally ordered by Bell. She alleges instead that Bell's administrative authority and Counsel's institutional role operated together in the challenged course of conduct, including matters in which Bell expressly approved, participated, was copied, or later possessed enforcement authority.

121. Plaintiff repeatedly objected, publicly criticized the restrictions, sought reconsideration and independent legal review, retained private counsel, and continued the youth program. She also notified Bell that she experienced the repeated interference as harassment. Plaintiff alleges that the restrictions nevertheless became more formal and specific, culminating in the August 2026 measures governing the very recurring youth activity, resources, and fundraising she had fought to preserve.

122. Plaintiff does not rely on timing or personal disagreement alone. She relies on the documented sequence, the close subject-matter fit between her objections and the later restrictions, Commission Counsel's August 19 statement identifying 'the Civic Youth Council,'

Bell's enforcement role under the Youth Safety Policy, and the earlier restrictions affecting Plaintiff's office. Plaintiff pleads Johnson's communications as evidence of the alleged mechanism, notice, and causation; Bell remains the official-capacity Defendant whose prospective enforcement authority is challenged.

122A. Plaintiff alleges that the challenged course of conduct increasingly reached ordinary District 6 administration, including calendars, publications, staff titles, printing, communications support, legal review, office resources, and personnel coordination. Plaintiff began copying other Commissioners on disputed administrative communications so contemporaneous third parties could see what was occurring and so the disputes would not remain confined to communications between Plaintiff, Defendant, and Commission staff. Plaintiff relies on those contemporaneous communications as evidence of her continuing objections and the expanding scope of the administrative dispute, not as proof that every disagreement independently violated the Constitution.

123. Under Sixth Circuit law, a First Amendment retaliation claim requires protected conduct, an adverse action that would deter a person of ordinary firmness, and a causal connection. Thaddeus-X v. Blatter, 175 F.3d 378, 394 (6th Cir. 1999) (en banc). Retaliatory acts against an elected official may be actionable where the conduct goes beyond protected political disagreement and imposes concrete governmental burdens. See Zilich v. Longo, 34 F.3d 359, 364-66 (6th Cir. 1994).

124. Plaintiff recognizes that governmental bodies may revise rules for legitimate administrative, safety, financial, and legal reasons and that verbal censure alone ordinarily does not establish a First Amendment retaliation claim. See Houston Community College System v. Wilson, 595

U.S. 468, 477-82 (2022). Her claim instead focuses on threatened or actual administrative, resource, fundraising, program, and enforcement consequences.

125. Plaintiff asks the Court to determine from the documentary record whether the challenged restrictions were adopted or enforced for legitimate neutral purposes or whether Plaintiff's protected speech, petitioning, and continued advocacy were a substantial or motivating factor in their application to Plaintiff and the established Civic Youth Council.

## XIV. SEPTEMBER 30 AND OCTOBER 1, 2026: IMMINENT HARM

126. The 2026-2027 Civic Youth Council was planned before August 20. Recruitment occurred by the May 19, 2026 completion ceremony, applications were accepted, and the first meeting/start of the program year is scheduled for October 1, 2026. (Exhibits Q-1 through Q-3, Q-7 through Q-9.)

127. Returning students had already confirmed participation and new applications had been received before the program year began. Recruitment was still ongoing when the August 20 measures were adopted immediately before the school-year outreach period. Plaintiff ordinarily would have continued contacting schools, students, parents, and community partners; instead, uncertainty over whether the recurring program would be prohibited or penalized caused Plaintiff to suspend, delay, or materially limit that recruitment. The application deadline was extended in part to preserve time for additional students to participate if the uncertainty could be resolved.

128. The threatened harm therefore reaches students already committed to October 1 and additional students who may lose a time-sensitive opportunity for civic education, leadership development, public service, and participation in an established local and national youth initiative. Once the fall recruitment period and opening of the program pass, those opportunities cannot be fully recreated by a later damages award.

129. The Wayne County Civic Youth Foundation was formed as a separate Michigan nonprofit corporation on July 30, 2026, with a separate account intended to receive and administer Foundation funds. (Exhibits Q-5, Q-6.)

130. A September 30, 2026 fundraising event is scheduled to support civic-youth programming. Plaintiff is publicly identified in connection with the event and alleges Resolution No. 2026-619's official-capacity fundraising language creates a concrete threat of application even though proceeds are intended for the separate Foundation. (Exhibit Q-4.)

131. Plaintiff must therefore decide whether to cancel, postpone, materially alter, or refrain from promoting and participating in already-planned activity, or proceed while risking adverse governmental enforcement. She seeks narrow preservation of the status quo.

## XV. COUNT I - FIRST AMENDMENT RETALIATION (42 U.S.C. § 1983)

132. Plaintiff incorporates all preceding paragraphs.

133. The First Amendment protects speech concerning governmental affairs and the right to petition government. See Pickering v. Board of Education, 391 U.S. 563, 574-75 (1968); Borough of Duryea v. Guarnieri, 564 U.S. 379, 388-89 (2011); Lane v. Franks, 573 U.S. 228, 236-37 (2014). See also Bond v. Floyd, 385 U.S. 116, 135-37 (1966) (recognizing First Amendment protection for an elected legislator's speech).

134. In the Sixth Circuit, a retaliation claim generally requires protected conduct, adverse action that would deter a person of ordinary firmness, and a causal connection. Thaddeus-X v. Blatter, 175 F.3d 378, 394 (6th Cir. 1999) (en banc).

135. Plaintiff alleges protected speech and petitioning, adverse administrative and enforcement actions, and facts supporting an inference of causation.

136. Plaintiff distinguishes legislative voting from subsequent administrative and enforcement conduct. See Zilich v. Longo, 34 F.3d 359, 364-66 (6th Cir. 1994).

137. Plaintiff seeks prospective relief preventing unconstitutional enforcement, not damages for legislative acts. Plaintiff does not claim an absolute constitutional entitlement to County-funded outside counsel, particular office expenditures, travel, or discretionary governmental benefits. Rather, she alleges that otherwise discretionary governmental resources and procedures may not be denied or burdened for a constitutionally prohibited retaliatory reason. See Perry v. Sindermann, 408 U.S. 593, 597 (1972).

## XVI. COUNT II - FIRST AMENDMENT SPEECH, PETITION, AND VIEWPOINT DISCRIMINATION (AS APPLIED)

138. Plaintiff incorporates all preceding paragraphs.

139. Plaintiff alleges that her public communications concerning Commission affairs, youth advocacy, and requests for legal review involve matters of public concern and protected petitioning.

140. Plaintiff alleges that some restrictions on her District 6 communications and later enforcement decisions were influenced by disagreement with the content or viewpoint of her speech.

141. Plaintiff recognizes that government-speech and government-resource doctrines may affect particular taxpayer-funded communications. She therefore pleads this claim as applied and does not contend that every County-funded publication is a private forum.

142. Plaintiff seeks a determination that Defendant may not use administrative or enforcement authority to burden Plaintiff's otherwise protected speech, petitioning, or constituent communication because of viewpoint or retaliation.

## XVII. COUNT III - FOURTEENTH AMENDMENT PROCEDURAL DUE PROCESS AND AS-APPLIED VAGUENESS

143. Plaintiff incorporates all preceding paragraphs.

144. Plaintiff alleges that the interaction among 'similar activities,' the single-day exception, the Youth Safety Policy, Rule 11, appropriations provisions, and enforcement mechanisms leaves inadequate notice as applied to her established program. Fair-notice principles guard against standards that fail to tell affected persons what conduct is prohibited or permit arbitrary enforcement. See Grayned v. City of Rockford, 408 U.S. 104, 108-09 (1972); FCC v. Fox Television Stations, Inc., 567 U.S. 239, 253 (2012).

145. Plaintiff alleges that concentrated initial decision-making, potentially significant budgetary or official-function consequences, overlapping review, late disclosure of operative materials, and the asserted overlap between the Rules Committee and Administrative Leadership Group create a substantial risk of arbitrary or erroneous application. Plaintiff does not contend that overlapping legislative, investigative, administrative, or adjudicative functions are unconstitutional by themselves. See Withrow v. Larkin, 421 U.S. 35, 47-55 (1975). She alleges that the particular combination is relevant here because of the alleged retaliation, individualized application, disputed notice, and threatened consequences.

145A. Plaintiff recognizes that overlapping investigative, administrative, and adjudicative functions are not automatically unconstitutional. See Withrow v. Larkin, 421 U.S. 35, 47-55 (1975). She alleges that the concentration of sponsorship, administration, agenda influence, enforcement discretion, resource consequences, and internal review is relevant when considered together with the particular retaliation chronology, disputed notice, and individualized application alleged here.

145B. Plaintiff likewise does not contend that every departure from an internal legislative procedure independently creates a federal constitutional claim. She relies on Yellin v. United States, 374 U.S. 109, 114-24 (1963), by analogy for the narrower proposition that formally adopted procedures intended to protect fairness or participation may matter when governmental authority is exercised against an individual and those procedures are not followed. Plaintiff pleads alleged procedural departures as evidence relevant to notice, fairness, causation, and the exercise of discretionary authority.

146. Plaintiff seeks prospective relief requiring constitutionally adequate notice and procedures before adverse consequences are imposed. Where constitutionally protected interests are subject to governmental deprivation, due process requires an opportunity to be heard at a meaningful time and in a meaningful manner, with the adequacy of procedures assessed in light of the interests and risks involved. See Mathews v. Eldridge, 424 U.S. 319, 333-35 (1976).

147. Plaintiff does not rely solely on a claimed property interest in a particular office-budget amount; she alleges concrete interference with official functions combined with disputed standards and threatened sanctions.

## XVIII. COUNT IV - STATE/LOCAL LAW: CHARTER AUTHORITY, ULTRA VIRES, AND DELEGATION

148. Plaintiff incorporates all preceding paragraphs.

149. Plaintiff alleges that Commission rulemaking authority under Charter § 3.114 does not itself authorize creation of substantive enforcement powers inconsistent with the Charter, applicable ordinances, Article V finance provisions, or Michigan law.

150. Plaintiff asks whether Rule 11 lawfully delegates to the Chairperson and Administrative Leadership Group authority to reduce, withhold, reallocate, or otherwise burden another elected Commissioner's authorized governmental resources as a penalty for alleged violations.

151. Plaintiff separately asks whether the Youth Safety Policy lawfully grants the Chairperson sole initial jurisdiction to determine whether another Commissioner's disputed youth activity is permissible.

152. Plaintiff relies on the Charter, Commission Rules, appropriations provisions, Outside Legal Counsel Ordinance, Ethics Ordinance, and applicable Michigan law, and pleads this count under supplemental jurisdiction.

153. Plaintiff does not ask the federal court to manage routine County administration; she asks the Court to determine the lawful boundary of identified powers where their enforcement allegedly burdens federal rights.

## XIX. LEGISLATIVE IMMUNITY AND PROSPECTIVE RELIEF

154. Plaintiff anticipates a legislative-immunity defense.

155. Plaintiff does not seek damages against Defendant for voting on or sponsoring legislation.

156. Absolute legislative immunity protects legislative acts. Bogan v. Scott-Harris, 523 U.S. 44, 54-55 (1998).

157. The functional inquiry distinguishes legislative acts from enforcement functions. Supreme Court of Virginia v. Consumers Union of the United States, Inc., 446 U.S. 719, 731-34 (1980).

157AA. Plaintiff is not attempting to impose personal liability on Defendant for sponsoring, debating, or voting for legislation. She asserts her own individual constitutional rights and seeks only prospective official-capacity relief against threatened implementation of provisions that assign present enforcement and administrative authority to the Chairperson. See Bond v. Floyd,

385 U.S. 116, 135-37 (1966) (First Amendment protection for an elected legislator's speech); Bogan, 523 U.S. at 54-55; Consumers Union, 446 U.S. at 731-37.

Plaintiff seeks prospective relief directed to Defendant's ongoing and threatened enforcement authority in her official capacity. Plaintiff does not rely on Ex parte Young as the source of an exception to state sovereign immunity because Defendant is a county official; the requested relief instead arises under § 1983 and the Court's federal-question and civil-rights jurisdiction.

XIX-A. REQUEST TO SUPPLEMENT THE RULE 65 RECORD WITH COMPLETE MEETING MATERIALS AND AUDIOVISUAL EVIDENCE

157A. Plaintiff respectfully requests leave, to the extent leave is required, to supplement the preliminary-injunction record with the complete agendas, journals, and available audiovisual recordings for the April 23, 2024 and December 11, 2024 Special Committee on the Wayne County Commission Youth Council meetings; the July 17 and August 7, 2025 full Commission meetings; and the complete August 20 and September 3, 2026 agendas, addenda, journals, and any subsequently produced audiovisual records. Plaintiff previously included only agenda cover pages for some meetings and seeks to replace or supplement those excerpts with the complete agendas so the Court may review the entire official context. Plaintiff also seeks leave to submit authenticated selected photographs of Youth Council/NACo participation and contemporaneous public reporting, including WDET coverage of the July 17 meeting and selected local reporting concerning the Youth Council's operation. These materials are offered for appropriate evidentiary purposes concerning chronology, notice, protected speech, Bell's involvement, the program's operation, and preservation of the governmental record; Plaintiff does not ask the Court to accept media reports as proof of every contested factual assertion.

## XX. RULE 65 - TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION

158. Plaintiff incorporates all preceding paragraphs and seeks relief under Federal Rule of Civil Procedure 65.

159. The September 30 fundraiser and October 1 program create imminent deadlines.

160. Likelihood of success: Plaintiff has pleaded substantial First Amendment retaliation, as-applied notice, and Charter/delegation questions supported by the challenged policies and chronology. See Thaddeus-X, 175 F.3d at 394.

161. Irreparable harm: cancellation or chilling of protected First Amendment activity, disruption of confirmed students and community partners, loss of the September 30 fundraising opportunity, and interruption of the fall recruitment window and October 1 start of an established civic program cannot be fully repaired by money damages. See Elrod v. Burns, 427 U.S. 347, 373 (1976); Overstreet v. Lexington-Fayette Urban County Government, 305 F.3d 566, 578 (6th Cir. 2002); Bays v. City of Fairborn, 668 F.3d 814, 821-22 (6th Cir. 2012); Fischer v. Thomas, 78 F.4th 864, 868-69 (6th Cir. 2023).

162. Balance of equities: Plaintiff does not seek suspension of neutral safety, procurement, accounting, parental-consent, or child-protection requirements; she seeks narrow preservation of the status quo.

163. Public interest: the public has interests in constitutional government, neutral enforcement, transparent constituent communication, safe youth participation, and lawful administration.

164. Plaintiff requests minimal or nominal security under Rule 65(c) to the extent security is required, because the requested relief is prospective, narrow, and public-interest oriented, while recognizing that the amount of security rests with the Court.

## XXI. REQUEST FOR RELIEF

165. WHEREFORE, Plaintiff respectfully requests that the Court declare the parties' rights under federal law and the Wayne County Charter; declare the lawful scope of the August 20, 2026 measures as applied to Plaintiff's established Civic Youth Council; and declare that the challenged provisions may not be enforced in retaliation for protected speech or petitioning.

166. Plaintiff requests temporary and preliminary injunctive relief preventing Defendant from prohibiting or penalizing the September 30, 2026 fundraising event, the October 1, 2026 program, or reasonable continuing recruitment and communications with prospective students and parents solely because the Civic Youth Council is recurring or similar to the former Commission Youth Council, subject to otherwise lawful and generally applicable safety, procurement, accounting, parental-consent, and child-protection requirements.

166A. Plaintiff does not ask the Court to require Wayne County to finance youth travel or any particular program expense. She asks that denial of County funding not be transformed, without identified lawful authority, into retaliatory penalties for otherwise-lawful, separately supported civic activity, and that neutral safety, parental-consent, procurement, accounting, and ethics requirements remain fully enforceable.

167. Plaintiff requests an order preventing Rule 11 penalties, censure, travel restrictions, budget reductions, or other adverse governmental consequences to the extent imposed solely because Plaintiff proceeds with the established program or engages in protected advocacy while this action is pending.

168. Plaintiff requests that, before adverse enforcement against the program, the County identify the specific provision allegedly prohibiting the conduct, the factual basis for the alleged violation, the decisionmaker, and the applicable review process.

169. Plaintiff requests taxable costs and such other prospective relief as the Court deems just and proper. Plaintiff is presently proceeding pro se and does not request attorney's fees for her own pro se work.

Respectfully submitted,

Monique Baker McCormick, Plaintiff, Pro Se

20169 James Couzens

Detroit, Michigan 48235

313-268-8802

Mccormickreport@yahoo.com

Date: ____________________

SUPPLEMENTAL EXHIBIT NOTE: Plaintiff intends the amended filing to use complete, rather than cover-page-only, agendas and corresponding official records for the April 23 and December 11, 2024 Special Committee meetings; December 19, 2024 full-board meeting; July 17 and August 7, 2025 full-board meetings; and August 20 and September 3, 2026 full-board meetings. Plaintiff also identifies the January 16, 2025 parent letter, parental permission/release, Washington fundraising proof, Lansing travel materials, selected NACo photographs, August 25, 2026 communications-staff exchange, September 14, 2026 Acting Clerk email, final Commission Counsel response, and selected contemporaneous media coverage as supplemental evidence. Media and photographs are offered for appropriate evidentiary purposes and not as a substitute for official records.

**CERTIFICATION, VERIFICATION, AND DECLARATION OF PARTY WITHOUT ATTORNEY**

I, Monique Baker McCormick, am the Plaintiff and am proceeding without an attorney. I certify that I have reviewed this Verified Complaint. I declare under penalty of perjury under 28 U.S.C. § 1746 that the factual allegations stated from my personal knowledge are true and correct, and that matters stated on information and belief are believed by me to be true. I understand that Federal Rule of Civil Procedure 11 requires an unrepresented party who signs a filing to certify, after an inquiry reasonable under the circumstances, that the filing is not being presented for an improper purpose, that the legal contentions are warranted by existing law or a nonfrivolous argument for changing existing law, and that factual contentions have or are likely to have evidentiary support.

Executed on: 9/16, 2026

Signature: [signature]

Printed Name: Monique Baker McCormick

Plaintiff, Pro Se

## APPENDIX A - EXPRESS STATEMENT OF WAIVER

Plaintiff hereby expressly waives the attorney-client privilege solely with respect to the specific communications herein with Felicia Johnson.

This express waiver is limited to the specific communications identified and relied upon in this filing and does not purport to waive attorney-client privilege or work-product protection as to undisclosed communications with Plaintiff's privately retained counsel, drafts, strategy, or any privilege belonging to another person or governmental entity.

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

Case No. 26-13466
Hon. Jonathan J.C. Grey

**AMENDED INDEX OF EXHIBITS**

Plaintiff Monique Baker McCormick - Amended Verified Complaint and Rule 65 Record

| **Date** | **Exhibit** | **Description** |
|---|---|---|
| 2020 | A | Resolution No. 2020-243 and documents establishing the Commission Youth Council. NOTE: Resolution 2026-619 later recites 2023-243; Plaintiff preserves the discrepancy. |
| 2022-2024 | B / B-1 | Early Commission/administrative structure and youth-program administration correspondence. |
| 2024 | C / C-1 / C-2 | Special Committee on Youth description, Plaintiff response, youth/parent participation materials. |
| Apr. 23, 2024 | D / D-1 / D-2 | Complete Special Committee agenda, meeting materials, and available audiovisual recording/timestamp reference. |
| Dec. 11, 2024 | D-3 / D-4 | Complete Special Committee agenda and audiovisual recording reference concerning funding/expenses and Youth Council programming. |
| Dec. 19, 2024 | E-5 / E-6 / E-7 | Complete full-board agenda, official journal, and audiovisual recording/timestamp reference concerning Washington/Tigers |

| Date | Exhibit | Description |
|---|---|---|
| | | funding action. |
| Jan. 16, 2025 | E-8 | Commission Counsel letter to participating parents distinguishing County authorization/liability from parents' ability to privately fund and send their child. |
| 2024-2025 | E / E-1 / E-2 / E-9 | Washington travel, parental permission/liability release, consents, fundraising, and related correspondence. |
| 2024-2025 | E-10 | Proof of outside/non-County fundraising or financial support used for Washington participation after County funding was declined. |
| 2024-2025 | E-11 | Lansing youth travel / Advocacy Day materials showing prior Commission-supported off-site civic travel and safeguards. |
| 2025-2026 | E-12 | Selected authenticated NACo/Washington photographs showing youth participation in civic-education activities. |
| Jan. 2025 | M-1 | Plaintiff Rule 11 objections and correspondence. |
| 2025 | M-2 | Applicable 2025 Rule 11 amendments and Commission action. |
| June 17, 2025 | E-4 | Plaintiff budget-planning / Special Committee meeting request and Defendant Bell response discussing continued $50,000 Youth Council allocation. |
| July 17, 2025 | F | Resolution No. 2025-492 and certified/adopted record. |
| July 17, 2025 | G / G-1 / G-2 | Complete full-board agenda, official journal, audiovisual recording/timestamp reference, attendance/excused-absence record, and student public-comment record. |

| Date | Exhibit | Description |
|---|---|---|
| Aug. 7, 2025 | H-1 through H-8 | Reconsideration/rescission request; complete agenda; official journal; audiovisual recording/timestamp reference; scheduling, notice, and response materials. |
| Aug./Sept. 2025 | I | District 6 Wayne County Civic Youth Council / Clerk Garrett partnership materials. |
| 2025-2026 | J / J-1 | Program materials and business-card, shirt, staff-title, logo/resource correspondence. |
| Nov. 2025-Feb. 2026 | K / K-1 through K-3 | Office allocation, calendar/Civic Youth Council interpretation, Plaintiff response, printing/resource correspondence. |
| May 8-15, 2026 | M-3 / N | Folmar memorandum/transmittal and Commission Counsel outside-counsel/official-capacity representation correspondence. |
| July 27, 2026 | M-4 | Commission Counsel email linking May 8 attorney memorandum to July 28 Rules Committee discussion. |
| July 27, 2026 | M-5 | Plaintiff 3:44 p.m. request for complete response, legal materials, and postponement if advance disclosure was not possible. |
| July 27, 2026 | M-6 | Commission Counsel 11:04 p.m. response identifying prior memoranda and disputing Plaintiff's position. |
| July 29, 2026 | M-7 | Post-Rules-Committee transmittals circulating committee documents/corrections. |
| July 30-Sept. 30, 2026 | Q-4 through Q-6 | Foundation formation, separate account proof, September 30 fundraiser materials. |

| Date | Exhibit | Description |
|---|---|---|
| Aug. 5, 2026 | N-3 | Commission Counsel letter to Allison Folmar regarding official-capacity representation, outside-counsel authority, Charter § 3.120, and Outside Legal Counsel Ordinance § 49-1; Bell and all Commissioners copied. |
| Aug. 10, 2026 | M-8 | Request for Formal Review and Written Findings concerning alleged violations and actual harm. |
| Aug. 18, 2026 | M-9 / M-10 | Revised Rules/policy package and Plaintiff proposed amendments/legal-analysis request. |
| Aug. 19, 2026 | M-11 | Commission Counsel 9:27 p.m. response and draft alternative/substitute resolution. |
| Aug. 20, 2026 | L-1 | Resolution No. 2026-619. |
| Aug. 20, 2026 | L-2 | Resolution No. 2026-620 and adopted Youth Safety Policy. |
| Aug. 20/21, 2026 | L-3 | Resolution No. 2026-618 and complete final 2025-2028 Rules of Procedure; preserve date discrepancy between adoption materials and final cover. |
| Late Aug. 2026 | L-4 | Request for August 20 audiovisual recording/journal and response reporting the meeting did not record / recording unavailable; journal when received. |
| Aug. 25, 2026 | K-4 | Plaintiff/Defendant email exchange concerning District 6 staff member Ariel Brantley's requested Communications Team point of contact. |

| Date | Exhibit | Description |
|---|---|---|
| Sept. 2, 2026 | N-2 | 10:20 a.m. Commission Counsel email disclosing June 22 Dickinson Wright engagement with Chair approval and pre-August-20 consultation. |
| Sept. 3, 2026 | N-1 | Full-Commission agenda, motion, vote, journal/minutes, and correspondence concerning outside-counsel request and denial. |
| Sept. 3, 2026 | L-5 | Complete agenda/addenda, audiovisual recording when available, proposed/final journal, and materials concerning Plaintiff's request to address the August 20 official record. |
| Sept. 9, 2026 | X-1 | Plaintiff communication to Commission Counsel concerning requested evidence, legal authority, and unresolved questions. |
| Sept. 2026 | X-2 | Commission Counsel final response referring generally to prior compliance/procurement communications and July 17 restrictions without identifying a specific transaction or adjudicated violation in that response. |
| Sept. 14, 2026 | L-6 | Acting Clerk Pam Fordham email advising that the September 3 journal would be posted after approval at the next full-board meeting. |
| 2026 | Q-1 through Q-3 / Q-7 through Q-9 | 2026-2027 applications/recruitment, acceptances, October 1 notice, May 19 recruitment, and related program materials. |
| Current | R | Wayne County Ethics Ordinance, Chapter 40. |
| Current | S | Wayne County Charter. |
| Current | T | Outside Legal Counsel Ordinance § 49-1 and related authority. |

| Date | Exhibit | Description |
| --- | --- | --- |
| Current | U-1 / U-2 | McCormick Report/public-disclosure correspondence and Chew On This Detroit materials. |
| 2025-2026 | U-3 through U-5 | Selected contemporaneous WDET, WXYZ, WJBK or other media reports concerning Youth Council operation and relevant Commission proceedings, offered for appropriate evidentiary purposes. |
| Summer 2026 | V-1 / V-2 | Comparator materials concerning recurring youth programming elsewhere in Wayne County government |

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

Case No. 26-13466
Hon. Jonathan J.C. Grey

**AMENDED INDEX OF EXHIBITS**

Plaintiff Monique Baker McCormick - First Amended Verified Complaint and Rule 65 Record

| Date | Exhibit | Description |
|---|---|---|
| 2020 | A | Resolution No. 2020-243 and documents establishing the Commission Youth Council. NOTE: Resolution 2026-619 later recites 2023-243; Plaintiff preserves the discrepancy. |
| 2022-2024 | B / B-1 | Early Commission/administrative structure and youth-program administration correspondence. |
| 2024 | C / C-1 / C-2 | Special Committee on Youth description, Plaintiff response, youth/parent participation materials. |
| Apr. 23, 2024 | D / D-1 / D-2 | Complete Special Committee agenda, meeting materials, and available audiovisual recording/timestamp reference. |
| Dec. 11, 2024 | D-3 / D-4 | Complete Special Committee agenda and audiovisual recording/timestamp reference concerning funding/expenses and Youth Council programming. |
| Dec. 19, 2024 | E-5 / E-6 / E-7 | Complete full-board agenda, official journal, and audiovisual |

| Date | Exhibit | Description |
|---|---|---|
| | | recording/timestamp reference concerning Washington/Tigers funding action. |
| Jan. 16, 2025 | E-8 | Commission Counsel letter to participating parents distinguishing County authorization/liability from parents' ability to privately fund and send their child. |
| 2024-2025 | E / E-1 / E-2 / E-9 | Washington travel, parental permission/liability release, consents, fundraising, and related correspondence. |
| 2024-2025 | E-10 | Proof of outside/non-County fundraising or financial support used for Washington participation after County funding was declined. |
| 2024-2025 | E-11 | Lansing youth travel / Advocacy Day materials showing prior Commission-supported off-site civic travel and safeguards. |
| 2025-2026 | E-12 | Selected authenticated NACo/Washington photographs showing youth participation in civic-education activities. |
| Jan. 2025 | M-1 | Plaintiff Rule 11 objections and correspondence. |
| 2025 | M-2 | Applicable 2025 Rule 11 amendments and Commission action. |
| June 17, 2025 | E-4 | Plaintiff budget-planning / Special Committee meeting request and Defendant Bell response discussing continued $50,000 Youth Council allocation. |
| July 17, 2025 | F | Resolution No. 2025-492 and certified/adopted record. |
| July 17, 2025 | G / G-1 / G-2 | Complete full-board agenda, official journal, audiovisual recording/timestamp reference, attendance/excused-absence record, |

| Date | Exhibit | Description |
|---|---|---|
| | | and student public-comment record. |
| Aug. 7, 2025 | H-1 through H-8 | Reconsideration/rescission request; complete agenda; official journal; audiovisual recording/timestamp reference; scheduling, notice, and response materials. |
| Aug./Sept. 2025 | I | District 6 Wayne County Civic Youth Council / Clerk Garrett partnership materials. |
| 2025-2026 | J / J-1 | Program materials and business-card, shirt, staff-title, logo/resource correspondence. |
| Nov. 2025-Feb. 2026 | K / K-1 through K-3 | Office allocation, calendar/Civic Youth Council interpretation, Plaintiff response, printing/resource correspondence. |
| May 8-15, 2026 | M-3 / N | Folmar memorandum/transmittal and Commission Counsel outside-counsel/official-capacity representation correspondence. |
| July 27, 2026 | M-4 | Commission Counsel email linking May 8 attorney memorandum to July 28 Rules Committee discussion. |
| July 27, 2026 | M-5 | Plaintiff 3:44 p.m. request for complete response, legal materials, and postponement if advance disclosure was not possible. |
| July 27, 2026 | M-6 | Commission Counsel 11:04 p.m. response identifying prior memoranda and disputing Plaintiff's position. |
| July 29, 2026 | M-7 | Post-Rules-Committee transmittals circulating committee documents/corrections. |
| July 30-Sept. 30, 2026 | Q-4 through Q-6 | Foundation formation, separate account proof, September 30 |

| Date | Exhibit | Description |
|---|---|---|
| | | fundraiser materials. |
| Aug. 5, 2026 | N-3 | Commission Counsel letter to Allison Folmar regarding official-capacity representation, outside-counsel authority, Charter § 3.120, and Outside Legal Counsel Ordinance § 49-1; Bell and all Commissioners copied. |
| Aug. 10, 2026 | M-8 | Request for Formal Review and Written Findings concerning alleged violations and actual harm. |
| Aug. 18, 2026 | M-9 / M-10 | Revised Rules/policy package and Plaintiff proposed amendments/legal-analysis request. |
| Aug. 19, 2026 | M-11 | Commission Counsel 9:27 p.m. response and draft alternative/substitute resolution. |
| Aug. 20, 2026 | L-1 | Resolution No. 2026-619. |
| Aug. 20, 2026 | L-2 | Resolution No. 2026-620 and adopted Youth Safety Policy. |
| Aug. 20/21, 2026 | L-3 | Resolution No. 2026-618 and complete final 2025-2028 Rules of Procedure; preserve date discrepancy between adoption materials and final cover. |
| Late Aug. 2026 | L-4 | Request for August 20 audiovisual recording/journal and response reporting the meeting did not record / recording unavailable; journal when received. |
| Aug. 25, 2026 | K-4 | Plaintiff/Defendant email exchange concerning District 6 staff member Ariel Brantley's requested Communications Team point of |

| Date | Exhibit | Description |
|---|---|---|
| | | contact. |
| Sept. 2, 2026 | N-2 | 10:20 a.m. Commission Counsel email disclosing June 22 Dickinson Wright engagement with Chair approval and pre-August-20 consultation. |
| Sept. 3, 2026 | N-1 | Full-Commission agenda, motion, vote, journal/minutes, and correspondence concerning outside-counsel request and denial. |
| Sept. 3, 2026 | L-5 | Complete agenda/addenda, audiovisual recording when available, proposed/final journal, and materials concerning Plaintiff's request to address the August 20 official record. |
| Sept. 9, 2026 | X-1 | Plaintiff communication to Commission Counsel concerning requested evidence, legal authority, and unresolved questions. |
| Sept. 2026 | X-2 | Commission Counsel final response referring generally to prior compliance/procurement communications and July 17 restrictions without identifying a specific transaction or adjudicated violation in that response. |
| Sept. 14, 2026 | L-6 | Acting Clerk Pam Fordham email advising that the September 3 journal would be posted after approval at the next full-board meeting. |
| 2026 | Q-1 through Q-3 / Q-7 through Q-9 | 2026-2027 applications/recruitment, acceptances, October 1 notice, May 19 recruitment, and related program materials. |
| Current | R | Wayne County Ethics Ordinance, Chapter 40. |
| Current | S | Wayne County Charter. |

| Date | Exhibit | Description |
|---|---|---|
| Current | T | Outside Legal Counsel Ordinance § 49-1 and related authority. |
| Current | U-1 / U-2 | McCormick Report/public-disclosure correspondence and Chew On This Detroit materials. |
| 2025-2026 | U-3 through U-5 | Selected contemporaneous WDET, WXYZ, WJBK or other media reports concerning Youth Council operation and relevant Commission proceedings, offered for appropriate evidentiary purposes. |
| To be authenticated | V-1 / V-2 | Comparator materials concerning recurring youth programming elsewhere in Wayne County government and recurring Commission constituent programming for other populations, if documentary support is obtained. |
| 2020-2025 | E-13 | Youth Council fiscal records, expense-request memoranda, approvals, payment-processing records, and budget/actual-spending records relevant to Chairperson authorization and Plaintiff's lack of unilateral disbursement authority. |
| 2024-2025 | E-14 | Detroit Tigers Youth Council funding/payment/reimbursement records, if obtained and authenticated, offered as a fiscal-process comparator. |
| Sept. 14-16, 2026 | X-1 | Plaintiff email confirming September 14 delivery of summons/Complaint to Commission Counsel and requesting confirmation of acceptance of service for amended papers; any response. |
| Sept. 15-16, 2026 | X-2 | Plaintiff concurrence email concerning temporary non-enforcement of August 20 Measures, Defendant Bell's September 15 |

| Date | Exhibit | Description |
| --- | --- | --- |
| | | acknowledgment that she received the email and would respond in writing, and any subsequent written response. |

**BakerMcCormickStaff**

**From:** Monique Baker McCormick
**Sent:** Thursday, September 3, 2026 11:54 AM
**To:** Pamela Fordham; Octavia Hunter; BakerMcCormickStaff
**Subject:** Aug 20th recording of comments Per Sept 3, 2026 Meeting

**Follow Up Flag:** Follow up
**Flag Status:** Flagged

**Good morning,**

**Please include minutes for journal for Aug 20th/ Sept 3rd**

**Madam Chair, thank you for allowing me the time to place this important matter on the record. I respectfully ask that I be allowed to complete my remarks without interruption. This is an important issue, and I believe my colleagues deserve to hear the full context.**

I recently sat down with Commissioner Wilson, and I appreciate him taking the time to understand why I am fighting so hard for our young people. For me, it is very simple: **I love our young people, and I want them to have the opportunity to thrive—not simply survive.**

This has been the work of my entire adult life. Before I became a Commissioner, I was a parent leader and PTA president. When I became a Commissioner, I brought that same commitment to this body. For nearly eight years, we built a Youth Council that gave young people an opportunity to learn government, participate in civic engagement, develop leadership skills and, most importantly, have a voice.

I was told that one of the concerns surrounding youth programming was the Washington, D.C. trip in 2025. So I want to put something on the record.

**Commission Counsel, Ms. Johnson, did your office send a letter to the parents of the youth regarding their participation in the Washington, D.C. trip?**

*If the answer is yes:*

Thank you. That letter made clear that the students could attend only in their personal capacity and that I would participate only in my personal capacity. Parents were informed. Permission forms were signed. The students traveled. They visited the Smithsonian, participated in the National Association of Counties conference, met county leaders from across the country and advocated for the creation of a national youth council.

These young people weren't simply sightseeing. **They were learning democracy by participating in it.**

They talked about mental health, gun violence, economic opportunity, food and water insecurity and the issues affecting young people in their communities. Their parents supported them. The students were proud. And I am proud that they had that opportunity.

So I have repeatedly asked a simple question: **What specific rule or law did I violate?** I have asked for the rule. I have asked for the policy. I have asked for documented wrongdoing. I have yet to be shown one.

When this Commission eliminated the Countywide Youth Council in 2025, I accepted that decision. I moved forward. I continued serving young people through my own office because **you cannot tell me what the needs of my district are, just as I cannot tell you what the needs of yours are.**

And that is why this proposed policy concerns me.

Today it may be my youth program. Tomorrow it could be a veteran program, a senior program, a neighborhood initiative or another service that your constituents need.

**Our districts are different. Our constituents are different. Our needs are different. That is why we were elected by individual districts.**

And we have to ask ourselves: Why are we creating barriers to proactive youth programming when Wayne County spends hundreds of millions of dollars dealing with youth problems after they occur?

I believe we should be investing earlier—in leadership, mentoring, civic engagement and opportunity.

**We should not eliminate the opportunity and then spend millions responding to the consequences.**

So I am asking my colleagues to look beyond me personally. Do the right thing for our youth. This is not about Monique Baker McCormick. It is about the independence of every Commissioner and the future of every young person in Wayne County.

Please vote **NO** on these restrictions of a one-time-youth event each year, our youth deserve more and need more resources not less, **vote no** on rules that restrict office budgets to be used for youth programs in our districts and send these rules back to committee so we can work together to make them fair, reasonable and workable for every district.

**We may disagree about the method, but I hope we can agree on the mission: our young people deserve opportunity. They deserve a voice. And they deserve us to fight for them.**

Monique Baker McCormick, MBA
Wayne County Commissioner 6th District
Chair, Wayne County Civic Youth Council
President, National Association of Counties Women's Council
500 Griswold 7th Floor
Detroit Michigan 48226
313-224-0884 (office)
mbmccormick@waynecountymi.com

*Together we can make a Difference!*

Good morning Chair Bell & Felicia,

During the July 28 , 2026 Rules Committee meeting, and in the July 2025 full board meeting allegations were presented and raised by Commissioners, in particular Commissioner Jonathan Kinloch, Commissioner David Knezek and Commission Marecki, suggesting that I had violated rules, laws or procedures.

I am respectfully requesting that the Chair and/or appropriate staff conduct a formal review of any alleged violations or wrongdoing associated with my service as Chair of the Wayne County Commission Youth Council, including matters involving expenditures, reimbursements, travel, fundraising, procurement, and youth programming.

For the record, I categorically disagree with that characterization, and I believe it is important that any such allegation be thoroughly investigated and resolved based on documented facts rather than statements or assumptions.

As commissioners we are advised of many hypothetical situations however, we make the choice to move in one direction or another that does not mean that a rule, ordinance, policy or law was violated.

Accordingly, I am requesting a **written determination** identifying whether any rule, ordinance, policy, procurement requirement, or other law was violated during my tenure as Youth Council Chair.

I am requesting that the Commission identify, in writing, **any specific allegation, documented violation, actual problem, or factual harm** that was attributed to my conduct as Chair of the Wayne County Commission Youth Council and brought to my attention during the period in question.

Specifically, I am requesting the identification of any **rule, ordinance, policy, law, procurement requirement, or other established requirement that was actually in effect at the time of the conduct** and that I was alleged to have violated. If any such matter was brought to my attention and I failed to immediately address or attempt to resolve it, please identify the specific issue, the date it was communicated to me, who communicated it, what corrective action was requested, and what response or action I took.

For clarity, **I am not requesting a list of suggested program changes made by commissioners, hypothetical, potential, anticipated, or later identified concerns**, nor am I asking for arguments about what could have been problematic under rules that did not exist at the time.

I am specifically requesting documented facts concerning **actual violations, actual financial or operational harm, actual litigation, actual claims, or other demonstrable harm** resulting from my actions as Chair.

If there were no such violations, actual harms, litigation, claims, or established rule violations, I respectfully request that the Commission state that clearly in writing.

Likewise, if no existing notice was provided to me that I was violating an existing rule or law, I ask that the written response state that as well. My purpose is to ensure that the public record accurately distinguishes between **what actually occurred and what is merely alleged, assumed, or being characterized as a problem after the fact.**

**Thank you**

***Monique Baker McCormick, MBA***

***Wayne County Commission District 6***
***Chair, Wayne County Civic Youth Council***
***Past-President, National Association of Counties Women's Council***
***500 Griswold, 7th Floor***
***Detroit, MI 48226***
**313-224-0884**
*Together we can make a difference...Do More!*

**/onique Baker McCormick**

**rom:** Monique Baker McCormick
**ent:** Wednesday, September 9, 2026 4:53 PM
**'o:** Felicia Johnson; Alisha Bell
**ubject:** Re: Request for Formal Review and Written Findings

'elicia,

am responding to the communication circulated to Commissioners and staff regarding the resolution adopted on August 20, 2026 and my prior equests for clarification. I want to ensure the record accurately reflects both my requests and Commission Counsel's stated position.

Most importantly, in your August 19 communication, you stated:

"Be advised that a resolution, rule, policy or procedure cannot empower an individual Commissioner to create a council, commission, board, ommittee, organization, association, program or group such as the Civic Youth Council…."

also renew my request for the documents and factual basis supporting statements that my administration of the former Youth Council violated procurement procedures or failed to comply with legal requirements. I dispute those assertions and note that I have requested identification of the specific transaction, procedure, law, policy, or legal request allegedly violated.

Finally, you understand as I have stated my objection has consistently been that the new rules and resolutions were used to prohibit or restrict an established youth civic-engagement program after I challenged the elimination of the Commission-wide Youth Council and continued youth programming through my District 6 office. As I stated on September 3, students are enrolled for this program year and killing the District 6 program is not just hurting me it's hurting the youth of Wayne County.

**Monique Baker McCormick, MBA**
**Wayne County Commission District 6**
**Mbmccormick@waynecountymi.gov**

Chair, Wayne County Civic Youth Council
Immediate-Past President, National Association of Counties Women's Council

Secretary, National Association of Black County Officials
500 Griswold, 7th Floor
**_Detroit, MI 48226_**
**313-224-0884**
*Together we can make a difference...Do More!*

On Aug 11, 2026, at 5:56 PM, Felicia Johnson <fjohnson@waynecountymi.gov> wrote:

Good evening Commissioner,

Receipt acknowledged.

Kind regards,

Felicia Johnson
Commission Counsel
Wayne County Commission
500 Griswold Street, 8th Floor
Detroit, Michigan 48226
Office: 313-224-6459
Cell: 313-549-6329

*This email and any files transmitted with it are confidential, may be subject to the attorney client, attorney work product or other privilege and intended solely for the use of the addressee(s). If you are not the named addressee, printing, disclosing, copying, distributing or taking any action in reliance on the contents of this information is strictly prohibited. Immediately notify the sender, by email reply, if you received this message by mistake, delete the message from your system and destroy any copies.*

**From:** Monique Baker McCormick <mbmccormick@waynecountymi.gov>
**Sent:** Monday, August 10, 2026 8:00 AM
**To:** Alisha Bell <Abell3@waynecountymi.gov>; Jonathan Kinloch <Jkinloch@waynecountymi.gov>; Felicia Johnson <fjohnson@waynecountymi.gov>
**Subject:** Request for Formal Review and Written Findings

**BakerMcCormickStaff**

| | |
|---|---|
| **From:** | BakerMcCormickStaff |
| **Sent:** | Thursday, September 3, 2026 11:48 AM |
| **To:** | Pamela Fordham; Octavia Hunter; Monique Baker McCormick |
| **Subject:** | September 3 2026 Commissioner Baker McCormick's Full Board Commissions meeting speech |

**Chair Bell and Colleagues,**

Thank you, Chair, for allowing me to address the Commission regarding my formal request for independent outside counsel.

Before I begin, I want the record to reflect that my staff is recording my comments today, and I respectfully request that my comments be entered into and preserved in the Commission Journal.

I am making this request for a specific reason.

While reviewing the Commission Journals from the meetings concerning the elimination of the Civic Youth Council and my objections to those actions, I found that my opposition and the objections I raised are not reflected in the official Journal.

Even more concerning, I was informed by the Commission Clerk three days ago that the recording of the August 20, 2026 full-board meeting—during which I again publicly stated my objections to the elimination of youth programming—is unavailable or does not exist.

I am not alleging that anyone intentionally destroyed, removed, or withheld that recording.

However, when my objections are not reflected in the official Journal, and the recording that would otherwise document what I stated publicly cannot be produced, I believe it is especially important that I clearly and formally place my position on the record today.

I am also formally requesting the preservation of all remaining records, documents, communications, and recordings concerning the July 28 Rules Committee meeting and the August 20 full-board proceedings.

**Now, why am I requesting independent outside counsel?**

For more than two years, I have requested independent legal review of matters directly affecting my office, my constituents, and the Civic Youth Council. I appreciate that this request is now before the full Commission.

But respectfully, this is something that should have been resolved before we reached this point.

Commission Counsel has stated that her office represents all Commissioners in their official capacities. At the same time, I have repeatedly challenged legal interpretations issued by that office concerning matters directly affecting my office and my programs.

Most recently, on August 19, Commission Counsel stated in writing that an individual Commissioner cannot create a "program or group, such as the Civic Youth Council."

That statement is significant because I was the Commissioner operating the established Civic Youth Council.

Therefore, when measures were adopted by this Commission on August 20 that prohibit recurring district youth programming, restrict the use of resources and fundraising, and establish enforcement mechanisms, those measures directly affect my office and the Civic Youth Council program that I had already established and was operating.

That is precisely why I am asking for a neutral and independent legal assessment.

I am not asking Commission Counsel to agree with me.

I am not asking this Commission to simply accept my interpretation of the law over hers.

**I am asking for neither side to grade its own paper.**

Before the August 20 vote, an independent attorney selected by this Commission could have reviewed these issues and provided a neutral legal opinion.

Instead, the same legal office whose interpretations I had challenged continued to advise on the controversy and the underlying legal questions.

Now, after the rules have been adopted, we are still asking questions that should have been answered beforehand.

**So, I want to place four specific questions on the record:**

**First:** Does my October 1 meeting with the Civic Youth Council qualify as the permitted single-day youth activity, even though that meeting begins the previously established 2026–2027 Civic Youth Council year?

**Second:** If the August 20 restrictions apply to a program that was established and actively recruiting students before August 20, what is the legal authority for applying those newly adopted restrictions to that existing program?

**Third:** What specific law prohibits an individual Commissioner from using otherwise authorized office resources for lawful, recurring civic, educational, or leadership programming for youth constituents?

**Fourth:** What legal authority permits the Chairperson and Administrative Leadership Group to determine and impose financial or administrative consequences against an elected Commissioner, and how does that authority interact with the Commission's existing Ethics Ordinance and the authority of the Ethics Board?

These are serious legal questions.

They deserve an independent and neutral legal assessment—not an interpretation solely from the County's legal office when that office's position is itself part of the dispute.

**Therefore, I am formally requesting that outside counsel of my choice be selected from the County's approved list of law firms to provide an impartial legal opinion on these matters.**

Commissioners, I want to be very clear: approving independent counsel does not mean taking my side.

It means ensuring that all of us have confidence in the legal answer.

When there is a genuine legal disagreement involving an elected official, the Commission, and the interpretation of rules that directly affect the official's office and programs, independent review protects everyone—this Commission, the

Commissioners individually, the administration, and ultimately the taxpayers of Wayne County.

We could have done this a year ago.

**Let's do it now.**

And again, I respectfully request that these comments be entered into the Commission Journal **word for word and in their entirety.** A copy of my prepared remarks has also been provided to the Commission Clerk.

Thank you, Chair.

*Ariel Brantley*
*Legislative Assistant*

Wayne County Commissioner, District 6
Monique Baker McCormick, MBA
500 Griswold 7th Floor
Detroit MI 48226
(Office) 313-224-0884
Bakermccormickstaff@waynecountymi.gov

X

Good morning Felicia and Alisha,

Per our conversations I have not received a reply, As explained time is of essence the September 30, program and Oct 1st fundraiser is soon and I want to confirm whether you are refraining from enforcing the August 20, 2026 Measures for Civic Youth Council activities while the legal issues are pending?

Also moving forward, Felicia I know you accepted service of this complaint and summons for Chair Bell on September 14th, then shortly after my staff member, Ariel Brantley, personally gave you the summons and complaint in paper form.

She stated to me that you were surprised to receive paper copies, but because I am not an attorney and representing myself, I will be providing paper copies moving forward.

I am now preparing to file a **First Amended Complaint** and related amendments. Please confirm whether you will also accept service of the First Amended Complaint, and supporting materials on behalf of Chair Bell or should we can take them to Chair Bell's office.

As you are aware, per the court rules I have been attempting in good faith to resolve or narrow the issues before seeking emergency relief.

Yesterday, before the full board meeting in the Commission Chambers, I personally asked Chair Bell whether she received the complaint and email. She stated she will provide response in writing. I have not received a response. I am again requesting a response in reference to not enforcing the August 20, 2026 Measures against the September 30 fundraiser and October 1 Civic Youth Council activities while the legal issues are pending?

As of this morning, September 16, 8:42 am I have not received that written response.
I remain available to discuss any portion of the matter that can be resolved without Court intervention.

**Monique Baker McCormick, MBA**
**Wayne County Commission District 6**
**Mbmccormick@waynecountymi.gov**

X

**Monique Baker McCormick**

**From:** Felicia Johnson
**Sent:** Wednesday, September 16, 2026 10:18 AM
**To:** Monique Baker McCormick; Alisha Bell
**Subject:** Re: Confirmation of Acceptance of Service & Amendments Case No. 26-13466

Good morning Commissioner Baker McCormick,

This response is for the limited purpose of advising you that Commission Counsel will not be representing Chairwoman Bell in this matter. Chairwoman Bell will be represented by counsel. You will be notified of the counsel and their contact information.

For clarification, I was surprised that your commission staff person handed me copies of documents, not that the copies were in paper form.

Kind regards,

Felicia Johnson
Commission Counsel
Wayne County Commission
500 Griswold Street, 8th Floor
Detroit, Michigan 48226
Office: 313-224-6459
Cell: 313-549-6329

*This email and any files transmitted with it are confidential, may be subject to the attorney client, attorney work product or other privilege and intended solely for the use of the addressee(s). If you are not the named addressee, printing, disclosing, copying, distributing or taking any action in reliance on the contents of this information is strictly prohibited. Immediately notify the sender, by email reply, if you received this message by mistake, delete the message from your system and destroy any copies.*

---

**From:** Monique Baker McCormick <mbmccormick@waynecountymi.gov>
**Sent:** Wednesday, September 16, 2026 8:44 AM
**To:** Felicia Johnson <fjohnson@waynecountymi.gov>; Alisha Bell <Abell3@waynecountymi.gov>
**Subject:** Confirmation of Acceptance of Service & Amendments Case No. 26-13466

**BakerMcCormickStaff**

| | |
|---|---|
| **From:** | Monique Baker McCormick |
| **Sent:** | Thursday, September 3, 2026 11:54 AM |
| **To:** | Pamela Fordham; Octavia Hunter; BakerMcCormickStaff |
| **Subject:** | Aug 20th recording of comments Per Sept 3, 2026 Meeting |
| | |
| **Follow Up Flag:** | Follow up |
| **Flag Status:** | Flagged |

**Good morning,**

**Please include minutes for journal for Aug 20th/ Sept 3rd**

**Madam Chair, thank you for allowing me the time to place this important matter on the record. I respectfully ask that I be allowed to complete my remarks without interruption. This is an important issue, and I believe my colleagues deserve to hear the full context.**

I recently sat down with Commissioner Wilson, and I appreciate him taking the time to understand why I am fighting so hard for our young people. For me, it is very simple: **I love our young people, and I want them to have the opportunity to thrive—not simply survive.**

This has been the work of my entire adult life. Before I became a Commissioner, I was a parent leader and PTA president. When I became a Commissioner, I brought that same commitment to this body. For nearly eight years, we built a Youth Council that gave young people an opportunity to learn government, participate in civic engagement, develop leadership skills and, most importantly, have a voice.

I was told that one of the concerns surrounding youth programming was the Washington, D.C. trip in 2025. So I want to put something on the record.

**Commission Counsel, Ms. Johnson, did your office send a letter to the parents of the youth regarding their participation in the Washington, D.C. trip?**

*If the answer is yes:*

Thank you. That letter made clear that the students could attend only in their personal capacity and that I would participate only in my personal capacity. Parents were informed. Permission forms were signed. The students traveled. They visited the Smithsonian, participated in the National Association of Counties conference, met county leaders from across the country and advocated for the creation of a national youth council.

These young people weren't simply sightseeing. **They were learning democracy by participating in it.**

They talked about mental health, gun violence, economic opportunity, food and water insecurity and the issues affecting young people in their communities. Their parents supported them. The students were proud. And I am proud that they had that opportunity.

So I have repeatedly asked a simple question: **What specific rule or law did I violate?** I have asked for the rule. I have asked for the policy. I have asked for documented wrongdoing. I have yet to be shown one.

When this Commission eliminated the Countywide Youth Council in 2025, I accepted that decision. I moved forward. I continued serving young people through my own office because **you cannot tell me what the needs of my district are, just as I cannot tell you what the needs of yours are.**

And that is why this proposed policy concerns me.

Today it may be my youth program. Tomorrow it could be a veteran program, a senior program, a neighborhood initiative or another service that your constituents need.

**Our districts are different. Our constituents are different. Our needs are different. That is why we were elected by individual districts.**

And we have to ask ourselves: Why are we creating barriers to proactive youth programming when Wayne County spends hundreds of millions of dollars dealing with youth problems after they occur?

I believe we should be investing earlier—in leadership, mentoring, civic engagement and opportunity.
**We should not eliminate the opportunity and then spend millions responding to the consequences.**
So I am asking my colleagues to look beyond me personally. Do the right thing for our youth. This is not about Monique Baker McCormick. It is about the independence of every Commissioner and the future of every young person in Wayne County.
Please vote **NO** on these restrictions of a one-time-youth event each year, our youth deserve more and need more resources not less, **vote no** on rules that restrict office budgets to be used for youth programs in our districts and send these rules back to committee so we can work together to make them fair, reasonable and workable for every district.
**We may disagree about the method, but I hope we can agree on the mission: our young people deserve opportunity. They deserve a voice. And they deserve us to fight for them.**

Monique Baker McCormick, MBA
Wayne County Commissioner 6th District
Chair, Wayne County Civic Youth Council
President, National Association of Counties Women's Council
500 Griswold 7th Floor
Detroit Michigan 48226
313-224-0884 (office)
mbmccormick@waynecountymi.com
*Together we can make a Difference!*

Good morning Chair Bell & Felicia,

During the July 28 , 2026 Rules Committee meeting, and in the July 2025 full board meeting allegations were presented and raised by Commissioners, in particular Commissioner Jonathan Kinloch, Commissioner David Knezek and Commission Marecki, suggesting that I had violated rules, laws or procedures.

I am respectfully requesting that the Chair and/or appropriate staff conduct a formal review of any alleged violations or wrongdoing associated with my service as Chair of the Wayne County Commission Youth Council, including matters involving expenditures, reimbursements, travel, fundraising, procurement, and youth programming.

For the record, I categorically disagree with that characterization, and I believe it is important that any such allegation be thoroughly investigated and resolved based on documented facts rather than statements or assumptions.

As commissioners we are advised of many hypothetical situations however, we make the choice to move in one direction or another that does not mean that a rule, ordinance, policy or law was violated.

Accordingly, I am requesting a **written determination** identifying whether any rule, ordinance, policy, procurement requirement, or other law was violated during my tenure as Youth Council Chair.

I am requesting that the Commission identify, in writing, **any specific allegation, documented violation, actual problem, or factual harm** that was attributed to my conduct as Chair of the Wayne County Commission Youth Council and brought to my attention during the period in question.

Specifically, I am requesting the identification of any **rule, ordinance, policy, law, procurement requirement, or other established requirement that was actually in effect at the time of the conduct** and that I was alleged to have violated. If any such matter was brought to my attention and I failed to immediately address or attempt to resolve it, please identify the specific issue, the date it was communicated to me, who communicated it, what corrective action was requested, and what response or action I took.

For clarity, **I am not requesting a list of suggested program changes made by commissioners, hypothetical, potential, anticipated, or later identified concerns**, nor am I asking for arguments about what could have been problematic under rules that did not exist at the time.

I am specifically requesting documented facts concerning **actual violations, actual financial or operational harm, actual litigation, actual claims, or other demonstrable harm** resulting from my actions as Chair.

If there were no such violations, actual harms, litigation, claims, or established rule violations, I respectfully request that the Commission state that clearly in writing.

Likewise, if no existing notice was provided to me that I was violating an existing rule or law, I ask that the written response state that as well. My purpose is to ensure that the public record accurately distinguishes between **what actually occurred and what is merely alleged, assumed, or being characterized as a problem after the fact.**

**Thank you**

***Monique Baker McCormick, MBA***

***Wayne County Commission District 6***
***Chair, Wayne County Civic Youth Council***
***Past-President, National Association of Counties Women's Council***
***500 Griswold, 7th Floor***
***Detroit, MI 48226***
**313-224-0884**
*Together we can make a difference...Do More!*

**Monique Baker McCormick**

**From:** Monique Baker McCormick
**Sent:** Wednesday, September 9, 2026 4:53 PM
**To:** Felicia Johnson; Alisha Bell
**Subject:** Re: Request for Formal Review and Written Findings

Felicia,

I am responding to the communication circulated to Commissioners and staff regarding the resolution adopted on August 20, 2026 and my prior requests for clarification. I want to ensure the record accurately reflects both my requests and Commission Counsel's stated position.

Most importantly, in your August 19 communication, you stated:

"Be advised that a resolution, rule, policy or procedure cannot empower an individual Commissioner to create a council, commission, board, committee, organization, association, program or group such as the Civic Youth Council...."

I also renew my request for the documents and factual basis supporting statements that my administration of the former Youth Council violated procurement procedures or failed to comply with legal requirements. I dispute those assertions and note that I have requested identification of the specific transaction, procedure, law, policy, or legal request allegedly violated.

Finally, you understand as I have stated my objection has consistently been that the new rules and resolutions were used to prohibit or restrict an established youth civic-engagement program after I challenged the elimination of the Commission-wide Youth Council and continued youth programming through my District 6 office. As I stated on September 3, students are enrolled for this program year and killing the District 6 program is not just hurting me it's hurting the youth of Wayne County.

**Monique Baker McCormick, MBA**
**Wayne County Commission District 6**
**Mbmccormick@waynecountymi.gov**

Chair, Wayne County Civic Youth Council
Immediate-Past President, National Association of Counties Women's Council

Secretary, National Association of Black County Officials
500 Griswold, 7th Floor
**_Detroit, MI 48226_**
**313-224-0884**
*Together we can make a difference...Do More!*

On Aug 11, 2026, at 5:56 PM, Felicia Johnson <fjohnson@waynecountymi.gov> wrote:

Good evening Commissioner,

Receipt acknowledged.

Kind regards,

Felicia Johnson
Commission Counsel
Wayne County Commission
500 Griswold Street, 8th Floor
Detroit, Michigan 48226
Office: 313-224-6459
Cell: 313-549-6329

*This email and any files transmitted with it are confidential, may be subject to the attorney client, attorney work product or other privilege and intended solely for the use of the addressee(s). If you are not the named addressee, printing, disclosing, copying, distributing or taking any action in reliance on the contents of this information is strictly prohibited. Immediately notify the sender, by email reply, if you received this message by mistake, delete the message from your system and destroy any copies.*

---

**From:** Monique Baker McCormick <mbmccormick@waynecountymi.gov>
**Sent:** Monday, August 10, 2026 8:00 AM
**To:** Alisha Bell <Abell3@waynecountymi.gov>; Jonathan Kinloch <Jkinloch@waynecountymi.gov>; Felicia Johnson <fjohnson@waynecountymi.gov>
**Subject:** Request for Formal Review and Written Findings

**BakerMcCormickStaff**

**From:** BakerMcCormickStaff
**Sent:** Thursday, September 3, 2026 11:48 AM
**To:** Pamela Fordham; Octavia Hunter; Monique Baker McCormick
**Subject:** September 3 2026 Commissioner Baker McCormick's Full Board Commissions meeting speech

**Chair Bell and Colleagues,**

Thank you, Chair, for allowing me to address the Commission regarding my formal request for independent outside counsel.

Before I begin, I want the record to reflect that my staff is recording my comments today, and I respectfully request that my comments be entered into and preserved in the Commission Journal.

I am making this request for a specific reason.

While reviewing the Commission Journals from the meetings concerning the elimination of the Civic Youth Council and my objections to those actions, I found that my opposition and the objections I raised are not reflected in the official Journal.

Even more concerning, I was informed by the Commission Clerk three days ago that the recording of the August 20, 2026 full-board meeting—during which I again publicly stated my objections to the elimination of youth programming—is unavailable or does not exist.

I am not alleging that anyone intentionally destroyed, removed, or withheld that recording.

However, when my objections are not reflected in the official Journal, and the recording that would otherwise document what I stated publicly cannot be produced, I believe it is especially important that I clearly and formally place my position on the record today.

I am also formally requesting the preservation of all remaining records, documents, communications, and recordings concerning the July 28 Rules Committee meeting and the August 20 full-board proceedings.

**Now, why am I requesting independent outside counsel?**

For more than two years, I have requested independent legal review of matters directly affecting my office, my constituents, and the Civic Youth Council. I appreciate that this request is now before the full Commission.

But respectfully, this is something that should have been resolved before we reached this point.

Commission Counsel has stated that her office represents all Commissioners in their official capacities. At the same time, I have repeatedly challenged legal interpretations issued by that office concerning matters directly affecting my office and my programs.

Most recently, on August 19, Commission Counsel stated in writing that an individual Commissioner cannot create a "program or group, such as the Civic Youth Council."

That statement is significant because I was the Commissioner operating the established Civic Youth Council.

Therefore, when measures were adopted by this Commission on August 20 that prohibit recurring district youth programming, restrict the use of resources and fundraising, and establish enforcement mechanisms, those measures directly affect my office and the Civic Youth Council program that I had already established and was operating.

That is precisely why I am asking for a neutral and independent legal assessment.

I am not asking Commission Counsel to agree with me.

I am not asking this Commission to simply accept my interpretation of the law over hers.

**I am asking for neither side to grade its own paper.**

Before the August 20 vote, an independent attorney selected by this Commission could have reviewed these issues and provided a neutral legal opinion.

Instead, the same legal office whose interpretations I had challenged continued to advise on the controversy and the underlying legal questions.

Now, after the rules have been adopted, we are still asking questions that should have been answered beforehand.

**So, I want to place four specific questions on the record:**

**First:** Does my October 1 meeting with the Civic Youth Council qualify as the permitted single-day youth activity, even though that meeting begins the previously established 2026–2027 Civic Youth Council year?

**Second:** If the August 20 restrictions apply to a program that was established and actively recruiting students before August 20, what is the legal authority for applying those newly adopted restrictions to that existing program?

**Third:** What specific law prohibits an individual Commissioner from using otherwise authorized office resources for lawful, recurring civic, educational, or leadership programming for youth constituents?

**Fourth:** What legal authority permits the Chairperson and Administrative Leadership Group to determine and impose financial or administrative consequences against an elected Commissioner, and how does that authority interact with the Commission's existing Ethics Ordinance and the authority of the Ethics Board?

These are serious legal questions.

They deserve an independent and neutral legal assessment—not an interpretation solely from the County's legal office when that office's position is itself part of the dispute.

**Therefore, I am formally requesting that outside counsel of my choice be selected from the County's approved list of law firms to provide an impartial legal opinion on these matters.**

Commissioners, I want to be very clear: approving independent counsel does not mean taking my side.

It means ensuring that all of us have confidence in the legal answer.

When there is a genuine legal disagreement involving an elected official, the Commission, and the interpretation of rules that directly affect the official's office and programs, independent review protects everyone—this Commission, the

Commissioners individually, the administration, and ultimately the taxpayers of Wayne County.

We could have done this a year ago.

**Let's do it now.**

And again, I respectfully request that these comments be entered into the Commission Journal **word for word and in their entirety.** A copy of my prepared remarks has also been provided to the Commission Clerk.

Thank you, Chair.

*Ariel Brantley*
*Legislative Assistant*

Wayne County Commissioner, District 6
Monique Baker McCormick, MBA
500 Griswold 7th Floor
Detroit MI 48226
(Office) 313-224-0884
Bakermccormickstaff@waynecountymi.gov

**Wayne County Commission Youth Council (WCCYC)**
**DIA Holiday Luncheon Meeting Parent/Guardian Permission Slip**

**Activity Information:**

**Place: Detroit Institute Of Arts (DIA) (5200 Woodward Avenue, Detroit, MI 48202**

**Date: Saturday December, 9 2023** **Time: 11:30 am to 3:30 pm**

**Method of Transportation: Parent/Guardian of the Student to Drop off and Pick-Up Promptly**

**Activity Description**: WCCYC Detroit Institute of Arts (DIA) Holiday Luncheon Meeting

**Please sign and return this form.**

I am the parent or guardian of Payton Kitchen ("Student"). The Student has my consent to participate in the above described Activity. The Student's participation in the Activity is voluntary. As provided above, I understand that I must provide transportation for the Student to and from the Activity or I give my permission for the WCCYC to transport the Student to and from the Activity.

Adult supervision will be provided for the Activity. I have advised the Student that he/she must follow the instructions of the WCCYC Administrators while participating in the Activity. I waive, release and hold harmless the Wayne County Commission Youth Council, Wayne County Commission and Wayne County, their officers, officials, employees, volunteers, agents and successors for any liability and damages such as injury that may result from participation in the Activity.

In case of an accident or illness, the WCCYC Administrators have my permission to seek emergency medical care or treatment for the Student.

**Name of Parent/Guardian (Printed):** Tallette Kitchen

**Signature of Parent/Guardian:** T Kitchen **Date:** ______________

**Emergency Contact:**

**Name:** Tallette orvFredric Kitchen **Phone #:** 313-588-4842 or 313-549-1458

**Wayne County Commission Youth Council (WCCYC)**
**DIA Holiday Luncheon Meeting Parent/Guardian Permission Slip**

**Activity Information:**

**Place: Detroit Institute Of Arts (DIA) (5200 Woodward Avenue, Detroit, MI 48202 Date:**

**Saturday December, 9 2023 Time: 11:30 am to 3:30 pm Method of Transportation:**

**Parent/Guardian of the Student to Drop off and Pick-Up Promptly Activity Description:**

**WCCYC Detroit Institute of Arts (DIA) Holiday Luncheon Meeting**

**Please sign and return this form.**

I am the parent or guardian of ("Student"). The Student has my consent to participate in the above described Activity. The Student's participation in the Activity is voluntary. As provided above, I understand that I must provide transportation for the Student to and from the Activity or I give my permission for the WCCYC to transport the Student to and from the Activity.

Adult supervision will be provided for the Activity. I have advised the Student that he/she must follow the instructions of the WCCYC Administrators while participating in the Activity. I waive, release and hold harmless the Wayne County Commission Youth Council, Wayne County Commission and Wayne County, their officers, officials, employees, volunteers, agents and successors for any liability and damages such as injury that may result from participation in the Activity.

In case of an accident or illness, the WCCYC Administrators have my permission to seek emergency medical care or treatment for the Student.

**Name of Parent/Guardian (Printed):** RIKA ROY______________________________

**Signature of Parent/Guardian:** Rika Roy **Date:** 12/06/07______________

**Emergency Contact:** Rika Roy

**Name: Phone #:** 313-419-5501

**Wayne County Commission Youth Council (WCCYC)**
**DIA Holiday Luncheon Meeting Parent/Guardian Permission Slip**

**Activity Information:**

**Place: Detroit Institute Of Arts (DIA) (5200 Woodward Avenue, Detroit, MI 48202**

**Date: Saturday December, 9 2023** **Time: 11:30 am to 3:30 pm**

**Method of Transportation: Parent/Guardian of the Student to Drop off and Pick-Up Promptly**

**Activity Description**: WCCYC Detroit Institute of Arts (DIA) Holiday Luncheon Meeting

**Please sign and return this form.**

I am the parent or guardian of Tayla Jackson ("Student"). The Student has my consent to participate in the above described Activity. The Student's participation in the Activity is voluntary. As provided above, I understand that I must provide transportation for the Student to and from the Activity or I give my permission for the WCCYC to transport the Student to and from the Activity.

Adult supervision will be provided for the Activity. I have advised the Student that he/she must follow the instructions of the WCCYC Administrators while participating in the Activity. I waive, release and hold harmless the Wayne County Commission Youth Council, Wayne County Commission and Wayne County, their officers, officials, employees, volunteers, agents and successors for any liability and damages such as injury that may result from participation in the Activity.

In case of an accident or illness, the WCCYC Administrators have my permission to seek emergency medical care or treatment for the Student.

**Name of Parent/Guardian (Printed):** Pamela Travis

**Signature of Parent/Guardian:** Pamela Travis **Date:** 12-7-2023

**Emergency Contact:**

**Name:** Pamela Travis **Phone #:** 313-671-3250

-N-

Duane Travis 313-598-1482

**Wayne County Commission Youth Council (WCCYC)**
**2023-2024 School Year Parent/Guardian Permission Slip**

**Activity Information:** DIA Holiday Luncheon Meeting

**Place**: Detroit Institute of Art

**Date:** 12/9/23 **Time:** 11:30 am - 3:30 pm

**Method of Transportation:** Car

**Activity Description**: DIA Holiday Luncheon Meeting

**Please sign and return this form.**

I am the parent or guardian of Maddison Fleming ("Student"). The Student has my consent to participate in the above described Activity. The Student's participation in the Activity is voluntary. As provided above, I understand that I must provide transportation for the Student to and from the Activity or I give my permission for the WCCYC to transport the Student to and from the Activity.

Adult supervision will be provided for the Activity. I have advised the Student that he/she must follow the instructions of the WCCYC Administrators while participating in the Activity. I waive, release and hold harmless the Wayne County Commission Youth Council, Wayne County Commission and Wayne County, their officers, officials, employees, volunteers, agents and successors for any liability and damages such as injury that may result from participation in the Activity.

In case of an accident or illness, the WCCYC Administrators have my permission to seek emergency medical care or treatment for the Student.

**Name of Parent/Guardian (Printed):** Cynthia Brown

**Signature of Parent/Guardian:** [signature] **Date:** 12/5/23

**Emergency Contact:**

**Name:** Cynthia Brown **Phone #:** 313-828-7406

## Wayne County Commission Youth Council (WCCYC)
## DIA Holiday Luncheon Meeting Parent/Guardian Permission Slip

**Activity Information:**

**Place: Detroit Institute Of Arts (DIA) (5200 Woodward Avenue, Detroit, MI 48202**

**Date: Saturday December, 9 2023** **Time: 11:30 am to 3:30 pm**

**Method of Transportation: Parent/Guardian of the Student to Drop off and Pick-Up Promptly**

**Activity Description**: WCCYC Detroit Institute of Arts (DIA) Holiday Luncheon Meeting

**Please sign and return this form.**

I am the parent or guardian of Payton Kitchen ("Student"). The Student has my consent to participate in the above described Activity. The Student's participation in the Activity is voluntary. As provided above, I understand that I must provide transportation for the Student to and from the Activity or I give my permission for the WCCYC to transport the Student to and from the Activity.

Adult supervision will be provided for the Activity. I have advised the Student that he/she must follow the instructions of the WCCYC Administrators while participating in the Activity. I waive, release and hold harmless the Wayne County Commission Youth Council, Wayne County Commission and Wayne County, their officers, officials, employees, volunteers, agents and successors for any liability and damages such as injury that may result from participation in the Activity.

In case of an accident or illness, the WCCYC Administrators have my permission to seek emergency medical care or treatment for the Student.

**Name of Parent/Guardian (Printed):** Tallette Kitchen

**Signature of Parent/Guardian:** T Kitchen **Date:** ______________

**Emergency Contact:**

**Name**: Tallette orvFredric Kitchen **Phone #:** 313-588-4842 or 313-549-1458

## Wayne County Commission Youth Council (WCCYC)
## DIA Holiday Luncheon Meeting Parent/Guardian Permission Slip

**Activity Information:**

**Place**: **Detroit Institute Of Arts (DIA) (5200 Woodward Avenue, Detroit, MI 48202**

**Date: Saturday December, 9 2023** **Time: 11:30 am to 3:30 pm**

**Method of Transportation: Parent/Guardian of the Student to Drop off and Pick-Up Promptly**

**Activity Description**: WCCYC Detroit Institute of Arts (DIA) Holiday Luncheon Meeting

**Please sign and return this form.**

I am the parent or guardian of Payton Kitchen ("Student"). The Student has my consent to participate in the above described Activity. The Student's participation in the Activity is voluntary. As provided above, I understand that I must provide transportation for the Student to and from the Activity or I give my permission for the WCCYC to transport the Student to and from the Activity.

Adult supervision will be provided for the Activity. I have advised the Student that he/she must follow the instructions of the WCCYC Administrators while participating in the Activity. I waive, release and hold harmless the Wayne County Commission Youth Council, Wayne County Commission and Wayne County, their officers, officials, employees, volunteers, agents and successors for any liability and damages such as injury that may result from participation in the Activity.

In case of an accident or illness, the WCCYC Administrators have my permission to seek emergency medical care or treatment for the Student.

**Name of Parent/Guardian (Printed):** Tallette Kitchen

**Signature of Parent/Guardian:** T Kitchen **Date:** ______________

**Emergency Contact:**

**Name**: Tallette orvFredric Kitchen **Phone #:** 313-588-4842 or 313-549-1458

## Wayne County Commission Youth Council (WCCYC)
## DIA Holiday Luncheon Meeting Parent/Guardian Permission Slip

**Activity Information:**

**Place: Detroit Institute Of Arts (DIA) (5200 Woodward Avenue, Detroit, MI 48202 Date:**

**Saturday December, 9 2023 Time: 11:30 am to 3:30 pm Method of Transportation:**

**Parent/Guardian of the Student to Drop off and Pick-Up Promptly Activity Description:**

**WCCYC Detroit Institute of Arts (DIA) Holiday Luncheon Meeting**

**Please sign and return this form.**

I am the parent or guardian of ("Student"). The Student has my consent to participate in the above described Activity. The Student's participation in the Activity is voluntary. As provided above, I understand that I must provide transportation for the Student to and from the Activity or I give my permission for the WCCYC to transport the Student to and from the Activity.

Adult supervision will be provided for the Activity. I have advised the Student that he/she must follow the instructions of the WCCYC Administrators while participating in the Activity. I waive, release and hold harmless the Wayne County Commission Youth Council, Wayne County Commission and Wayne County, their officers, officials, employees, volunteers, agents and successors for any liability and damages such as injury that may result from participation in the Activity.

In case of an accident or illness, the WCCYC Administrators have my permission to seek emergency medical care or treatment for the Student.

**Name of Parent/Guardian (Printed):** RIKA ROY____________________________________

**Signature of Parent/Guardian:** Rika Roy **Date:** 12/06/07______________

**Emergency Contact:** Rika Roy

**Name: Phone #:** 313-419-5501

**Wayne County Commission Youth Council (WCCYC)**
**DIA Holiday Luncheon Meeting Parent/Guardian Permission Slip**

**Activity Information:**

**Place: Detroit Institute Of Arts (DIA) (5200 Woodward Avenue, Detroit, MI 48202**

**Date: Saturday December, 9 2023** **Time: 11:30 am to 3:30 pm**

**Method of Transportation: Parent/Guardian of the Student to Drop off and Pick-Up Promptly**

**Activity Description**: WCCYC Detroit Institute of Arts (DIA) Holiday Luncheon Meeting

**Please sign and return this form.**

I am the parent or guardian of Tayla Jackson ("Student"). The Student has my consent to participate in the above described Activity. The Student's participation in the Activity is voluntary. As provided above, I understand that I must provide transportation for the Student to and from the Activity or I give my permission for the WCCYC to transport the Student to and from the Activity.

Adult supervision will be provided for the Activity. I have advised the Student that he/she must follow the instructions of the WCCYC Administrators while participating in the Activity. I waive, release and hold harmless the Wayne County Commission Youth Council, Wayne County Commission and Wayne County, their officers, officials, employees, volunteers, agents and successors for any liability and damages such as injury that may result from participation in the Activity.

In case of an accident or illness, the WCCYC Administrators have my permission to seek emergency medical care or treatment for the Student.

**Name of Parent/Guardian (Printed):** Pamela Travis

**Signature of Parent/Guardian:** Pamela Travis **Date:** 12-7-2023

**Emergency Contact:**

**Name:** Pamela Travis **Phone #:** 313-671-3250

-N- Duane Travis 313-598-1482

**Wayne County Commission Youth Council (WCCYC)**
**2023-2024 School Year Parent/Guardian Permission Slip**

**Activity Information:** DIA Holiday Luncheon Meeting

**Place**: Detroit Institute of Art

**Date:** 12/9/23 **Time:** 11:30 am - 3:30 pm

**Method of Transportation:** Car

**Activity Description**: DIA Holiday Luncheon Meeting

**Please sign and return this form.**

I am the parent or guardian of Maddison Fleming ("Student"). The Student has my consent to participate in the above described Activity. The Student's participation in the Activity is voluntary. As provided above, I understand that I must provide transportation for the Student to and from the Activity or I give my permission for the WCCYC to transport the Student to and from the Activity.

Adult supervision will be provided for the Activity. I have advised the Student that he/she must follow the instructions of the WCCYC Administrators while participating in the Activity. I waive, release and hold harmless the Wayne County Commission Youth Council, Wayne County Commission and Wayne County, their officers, officials, employees, volunteers, agents and successors for any liability and damages such as injury that may result from participation in the Activity.

In case of an accident or illness, the WCCYC Administrators have my permission to seek emergency medical care or treatment for the Student.

**Name of Parent/Guardian (Printed):** Cynthia Brown

**Signature of Parent/Guardian:** [signature] **Date:** 12/5/23

**Emergency Contact:**

**Name:** Cynthia Brown **Phone #:** 313-828-7406

# Inaugural Wayne County Commission Youth Council (WCCYC)

## Inaugural Meeting

## "Create Opportunity Realize Success"

# Agenda

October 7th, 2021 6 P.M.

## Zoom Link:

Join Zoom Meeting
https://zoom.us/j/2112321934

Meeting ID: 211 232 1934
646-876-9923 or 301-715-8592
If you have any questions contact Gloria Patterson at 313-224-0884 or
WayneCountyYouth@Waynecounty.com

**6:00 PM** **Welcome**

Wayne County Commissioner, Monique Baker McCormick (MBM), 6th District, Program Creator, Sponsor and Administrator

**Opening Invocation**

**6:15** **Introduction of Wayne County Commissioners**

Monique Baker McCormick, Chair Youth Council

Alisha Bell, Commission Chair

| | | |
|---|---|---|
| Joe Palamara | Jonathan C. Kinloch | Tim Killeen |
| Irma Clark-Coleman | David Knezek Jr | Terry Marecki |
| Melissa Daub | Al Haidous | Glenn Anderson |
| Sam Baydoun | Raymond Basham | Martha G. Scott |
| Ionia Varga | | |

**6:30** **Roll Call | Introduction | Oath of Wayne County Commission Youth Council 2021 Members** – Commissioner MBM

Commissioner Clark-Coleman

**Jaden Walton**
Commissioner Kinloch

**Dierra Surles**
Commissioner Kinloch

Commissioner MBM

Commissioner MBM

**Gabrielle Langston**
Commissioner Marecki

**Jayvonne Simmons**
Commissioner Killeen

**Kendall Spivey**
Commissioner Killeen

Commissioner Scott

**Alexa Saleh**
Commissioner Baydoun

Commissioner Bell

Commissioner Bell

- **Open Floor for Nomination for Officers : WCCYC- Chair, Vice Chair and Secretary, - Appointed by Chair - Social media Chair, Events Chair**

- **Review WCCYC Code of Conduct**

    - **Gloria Patterson**, WCCYC Coordinator Commissioner MBM Office

**7:00pm** **History of Wayne County/ Overview of WCCYC program 2021**

- Wayne County History Past and Present
- Founded by U.S. General "Mad Anthony" Wayne in 1796
- Elected officials

**Elected Officials – Voted into office**

County Executive: Warren Evans- Executive Branch (Democrat)
County Commissioner- Legislative Branch

- Other Elected Officials
    - Prosecuting Attorney: Kym Worthy (Democrat)
    - Sheriff: Benny N. Napoleon (Democrat)
    - County Clerk: Cathy M. Garrett (Democrat)
    - County Treasurer: Eric Sabree (Democrat)
    - Register of Deeds: Bernard J. Youngblood (Democrat)

- Circuit Court (3rd Circuit encompasses Wayne County): 61 judges (non-partisan)
- Probate Court: 8 judges (non-partisan)

**Legislative Branch- Wayne County Commission**

- Wayne County Commission: Alisha Bell, Chair (Democratic) 15 members, elected from districts (14 Democrats, 1 Republican)

**Wayne County Commission Districts**




**Program Overview**

- **Zoom Meetings held 4th Thursday of Month @ 6pm / Sub Committees <u>Meeting Dates</u>**

***October 7, 2021** – Book reading (Who moved the cheese?) Who are your local elected leaders? - Who is your county commissioner and an interesting fact?

***November 18, 2021**- MSU Extension/ Book Discussion, Youth Initiative Resolution (3 Topics)
***December 16, 2021** - Holiday Meeting/ Outing) DIA
**January 27, 2022** -Youth Initiative Topic Due/Guest Speaker
**February 24, 2022**- Community Service Project/ Guest Speaker
**March 24, 2022**- Verizon 5G Virtual Tour/Guest Speaker
**April 28, 2022** – Annual Report Youth Initiative Resolution Presented
**May 2022**- Completion ceremony

***Changed due to the holiday**

- Elections - WCCYC candidates November 18th ( nomination bio due to waynecountyyouth@waynecounty.com by 5pm on **November 11th**)
- Determine Youth Initiative on or before January 27th, 2022
- Proposed Resolution Annual Report presented to the full board – tentatively April 2022
- Guest Speakers
- Periodic Assignments/Outings
- Meet with your Commissioner
- Communications & Social Media
- Parental Advocacy
- Junior Achievement

**7:30 Questions/ Meeting adjournment**

## Next Zoom Meeting November 18, 2021 @ 6 pm

## Important Due Dates

**November 11th- Candidate official nomination bio due**

**December 16th (Transportation)**

**January 27th- Youth Initiative Topic Due**

***Welcome Youth Members go forth and make your communities a better place for yourself, families, friends, & neighbors***

# Wayne County Commission Youth Council
# 2023-2024 Meetings
# Attendance Sheet For Members

## September 26, 2023 Zoom Meeting 6 p.m.

Olivia Sherwood - Present
Kelli Cox - Present
Maddison Fleming - Present
Maya Freitas - Present
Noah Gubin - Present
Lauren Hopson - Present
Jayla Jackson - Present
Jahnean Jackson - Present
Keyaira Johnson - Present
Priya Roy - Present
Nidhi Narendra Kumar - Present
Rishi Narendra Kumar - Present
Thomas Besek - Present
Zion McCain - Present
Payton Kitchen - Not Present
Leila Hilden - Not Present
Leah Irving - Not Present

14 members were present and 3 were not present.
The Quorum was fulfilled.

## WCCYC MEMBER ATTENDANCE SHEET

| | | | |
|---|---|---|---|
| **Project:** | October WCCYC Regular Business Meeting | **Meeting Date:** | October 26, 2023 |
| **Facilitator:** | Robert Pawlowski | **Place/Room:** | Zoom Meeting |

| Name | Title | Present | Absent | Excused | Head count |
|---|---|---|---|---|---|
| Zion McCain | Chair | √ | | | |
| Keyaira Johnson | Vice Chair | √ | | ~~X~~ | |
| Nidhi Kumar | Secretary | √ | | | |
| Noah Gubin | Social Media Chair | √ | ~~√~~ | | |
| Thomas Besek | Member | | √ | | |
| Kelli Cox | Member | | √ | | |
| Leila Hilden | Member | √ | | | |
| Maya Freitas | Member | | | √ | |
| Lauren Hopson | Member | √ | | | |
| Leah Irving | Member | √ | | | |
| Jahnean Jackson | Member | √ | ~~√~~ | | |
| Jayla Jackson | Member | √ | | | |
| Rishi Kumar | Member | | | √ | |
| Olivia Sherwood | Member | √ | | | |
| Priya Roy | Member | √ | | | |
| Payton Kitchen | Member | √ | | | |
| Maddison Fleming | Member | √ | | | |
| Jasir Rahamon | member | | | √ | |
| Quorum Head Count | | | | | Quorum presented 12 |

Wayne State

**Together We Can Make A Difference**

**Wayne County Commissioner District 6 - Monique Baker McCormick**

**Event:** **Date:** 11/16/23

| NAME | PHONE | EMAIL | ADDRESS | ZIP |
|---|---|---|---|---|
| Leah Irving | 313-200-3384 | ctleahi@gmail.com | 11434 Lansdowne st | 48224 |
| Maya Freitas | 734-512-9589 | Mayafreitas1@gmail.com | 16737 Anderson Dr. | 48195 |
| Leila Hilden | 734-752-5553 | doozer311@gmail.com | 25160 Crowley st. | 48180 |
| Olivia Sherwood | 313-673-0047 | OSherwood2007@gmail.Com | 1025 White Ave | 48146 |
| Kheyaira Johnson | 313-694-9179 | kheyajohnson02@gmail.com | 19515 Fielding St | 48219 |
| Noah Gubin | 3134235997 | noahgub@icloud.com | 28270 Rosemont | 48060 |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |

O

**Together We Can Make A Difference**

**Wayne County Commissioner District 6 - Monique Baker McCormick**

**Event:** **Date:** 11/16/23

| NAME | PHONE | EMAIL | ADDRESS | ZIP |
|---|---|---|---|---|
| Maya Payton Kitchen | 3134004558 | ~~PK~~ pkitchen07@gmail.com | 47315 Sherystone Dr | 48188 |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |

Recv'd T-Shirt and Book

# SIGN-IN SHEET

Date: December 9 2023

**WCCYC DIA Holiday Luncheon Meeting**

| Name | "E-Mail" | Phone Number | Commissioner District or City | Grade |
|---|---|---|---|---|
| Jayla Jackson | JJayla690@gmail.com | 313 862 9188 | district 3 | 10th |
| Noah Gubin | noahgub@idcd | 313 423 5997 | District 3 | 12th |
| Payton Kitchen | pkitchen07@gmail.com | 3135884842 | District 11 | 11th |
| Priya Roy | priyaroyou106@gmail.com | 313-327-8367 | District 3 | 12th |
| Cheo (K) | | (313) 5279 | | |
| Marlena Tolbert | Mact5379@yahoo.com | (313) 790-5929 | | |
| Kanaw Kheperu | K2fast@Live.com | (313 341- | | |
| Zion McCann | [illegible] | (313)819-8239 | District 8 | 12th |
| Quintin Harbin | harbinq@yahoo.com | 248-843-4492 | | |
| Rebecca Limbaugh | rlimbaugh1@gmail.com | 248 342 9983 | District 8 | 12th |
| Stacey Cruse | smcruse68@gmail.com | 313-523-6897 | District 8 | 12th |
| Leah Irving | ctleahi@gmail.com | 313-200-3384 | | 11th |
| Vivian Lamar | blessedbossv@gmail.com | (313)728 0324 | | |
| Cynthia Brown | verypositive03@gmail.com | | District "6" | 10th |
| Eddie Fleming | flems8531@gmail | 313-657-0620 | "6" | 10th |
| Maddison Fleming | Maddisonf1982@gmail | 313-434-9958 | District 1 | 10th |
| Lauren Hopson | laurenhopson7@gmail.com | 313-979-0806 | | 12th |

# Wayne County Commission Youth Council
# 2023-2024 Meetings
# Attendance Sheet For Members

## September 26, 2023 Zoom Meeting 6 p.m.

Olivia Sherwood - Present
Kelli Cox - Present
Maddison Fleming - Present
Maya Freitas - Present
Noah Gubin - Present
Lauren Hopson - Present
Jayla Jackson - Present
Jahnean Jackson - Present
Keyaira Johnson - Present
Priya Roy - Present
Nidhi Narendra Kumar - Present
Rishi Narendra Kumar - Present
Thomas Besek - Present
Zion McCain - Present
Payton Kitchen - Not Present
Leila Hilden - Not Present
Leah Irving - Not Present

14 members were present and 3 were not present.
The Quorum was fulfilled.

## WCCYC MEMBER ATTENDANCE SHEET

| | | | |
|---|---|---|---|
| **Project:** | October WCCYC Regular Business Meeting | **Meeting Date:** | October 26, 2023 |
| **Facilitator:** | Robert Pawlowski | **Place/Room:** | Zoom Meeting |

| Name | Title | Present | Absent | Excused | Head count |
|---|---|---|---|---|---|
| Zion McCain | Chair | ✓ | | | |
| Keyaira Johnson | Vice Chair | ✓ | | ~~X~~ | |
| Nidhi Kumar | Secretary | ✓ | | | |
| Noah Gubin | Social Media Chair | ✓ | ~~✓~~ | | |
| Thomas Besek | Member | | ✓ | | |
| Kelli Cox | Member | | ✓ | | |
| Leila Hilden | Member | ✓ | | | |
| Maya Freitas | Member | | | ✓ | |
| Lauren Hopson | Member | ✓ | | | |
| Leah Irving | Member | ✓ | | | |
| Jahnean Jackson | Member | ✓ | ~~✓~~ | ✓ | |
| Jayla Jackson | Member | ✓ | | | |
| Rishi Kumar | Member | | | ✓ | |
| Olivia Sherwood | Member | ✓ | | | |
| Priya Roy | Member | ✓ | | | |
| Payton Kitchen | Member | ✓ | | | |
| Maddison Fleming | Member | ✓ | | | |
| Jasir rahanan | member | | | ✓ | |
| Quorum Head Count | | | | | Quorum presented |

12

**Together We Can Make A Difference**

Wayne State

**Wayne County Commissioner District 6 - Monique Baker McCormick**

**Event:**

**Date:** 11/16/23

| NAME | PHONE | EMAIL | ADDRESS | ZIP |
|---|---|---|---|---|
| Leah Irving | 313-200-3384 | ctleahi@gmail.com | 11434 Lansdowne st | 48224 |
| Maya Freitas | 734-512-9519 | Mayafreitas1@gmail.com | 16737 Anderson Dr. | 48195 |
| Leila Hilden | 734-752-5553 | doozer311@gmail.com | 25160 Crowley st. | 48180 |
| Olivia Sherwood | 313-673-0047 | OSherwood2007@gmail.Com | 1025 White Ave | 48146 |
| Kheyaira Johnson | 313-694-9179 | kheyajohnson02@gmail.com | 19515 Fielding St | 48219 |
| Noah Gubin | 3134235997 | noahgub@icloud.com | 28270 Rosemont | 48060 |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |

O

**Together We Can Make A Difference**

**Wayne County Commissioner District 6 - Monique Baker McCormick**

**Event:** **Date:** 11/16/23

| NAME | PHONE | EMAIL | ADDRESS | ZIP |
|---|---|---|---|---|
| Maya Payton Kitchen | 3134004558 | ~~PK~~ pkitchen07@gmail.com | 47315 Shevstone Dr | 48188 |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |

[illegible] T Sheet and Book

# SIGN-IN SHEET

Date: December 9 2023

**WCCYC DIA Holiday Luncheon Meeting**

| Name | "E-Mail" | Phone Number | Commissioner District or City | Grade |
|---|---|---|---|---|
| Jayh Jackson | JJayla690@gmail.com | 313 862 9188 | district 3 | 10th |
| Noah Gubin | noahgub@icloud | 313 423 5997 | District 3 | 12th |
| PaytonKitchen | pkitchen07@gmailcom | 3135884842 | District 11 | 11th |
| Priya Roy | piiyaroyou106@gmail.com | 313-327-8367 | District 3 | 12th |
| Cheo (K) | | (313) 190-5279 | | |
| Mawlana Tolbert | maat5379@yahoo.com | (313) 341-5929 | | |
| Kamau Kheperu | K2fast@Live.com | 313 | | |
| Zion McCann | [illegible] | (313)819-8239 | District 8 | 12th |
| Quintin Harbin | harbinq@ yahoo.com | 248-843-4492 | | |
| Rebecca Limbaugh | rlimbaugh1@gmail.com | 248 342-9583 | District 8 | 12th |
| STACEY Cruse | smcruse68@gmail.com | 313-523-6897 | District 8 | 12th |
| Leah Irving | ctleahi@gmail.com | 313-200-3384 | | 11th |
| Vivian Lamar | blessedbossv@gmail.com | (313)728 0324 | | |
| Cynthia Brown | [illegible]@gmail.com | | District "6" | 10th |
| Eddie Fleming | flems8531@gmail | 313-657-0620 | "6" | 10th |
| Maddison Fleming | Maddisonf1432@gmail | 313-434-9958 | District 1 | 10th |
| LAUren Hopson | laurenhopson7@gmail.com | 313-979-0806 | | 12th |

# CHARTER BUS TRANSPORTATION REQUEST

Please return all request to: EMAIL: TRIUMPHCHARTER@GMAIL.COM

please use this number: +1 (313) 22 -0884

**GROUP NAME:** Wayne county commission Youth council **PHONE:** +1 (734) 341-1874

**ADDRESS:** 500 Griswold street, Detroit, Mi 48226

**TRIP DATE:** March 13, 2024 **REQUESTED BY:** ______

**DESTINATION:** Michigan State Capitol **EMAIL:** wayneyouth2020@gmail.com

**ADDRESS:** 100 N Capitol Ave, Lansing, Mi 48933

Pick-Up Time: 7:30 (AM)/PM

Return Time: 5:00 AM/(PM) # of Buses 1

(Please Check the Appropriate):

☒ ENROUTE STOP Michigan capitol

☐ Shuttle Bus ☐ Athletic Request

☐ Local Tour ☐ Luggage/Equipment ☐ Other______

**NO PERSONAL CHECKS FOR TRANSPORTATION SERVICES**

Person/Agency Paying for trip:
(Please list your complete itinerary with addresses and times. If necessary, please use additional paper)

| | |
|---|---|
| Name Cynthia M Douglas | Multiple Destination |
| Address 500 Griswold Street | 1st |
| City/Zip Detroit, Mi 48226 | Address |
| Phone +1 (313) 224-0948 | 2nd |
| | Address |
| | |

Requesting Bus with TV, intercom, Movies

**TRIUMPH APPROVAL**:

Name: ______

Date Received: ______

Date Approved: ______

## Business Trip Itinerary| Name

| Date | Depart from | Depart time | Destination | Arrival time | Destination address |
|---|---|---|---|---|---|
| 03/13/2026 | Guardian Building | 7:30 AM | Michigan State Capitol | 9:00 AM | 100 N Capitol Ave, Lansing, Mi 48933 |
| | | | | | |
| 03/13/2026 | Michigan State Capitol | 4:00PM | Guardian Building | 5:30 PM | 500 Griswold Street, Detroit, Mi 48226 |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |

NOTES:

We will be ready to board the bus at 7:30 am from the Guardian Building. we are hoping to arrive at the Michigan State Capitol by 9:00 AM promptly. The exact drop off location will be on Ottwa street at the Capitol Visitor center. Address is 323 W Ottawa St, Lansing, Mi 48933

our Depature time from the visitor center where they dropped us off in the morning will be 4:00 pm. we will head back to the Guardian Building and we aim to arrive between 5:00 PM and 5:30 PM, depending on the traffic that day.

**TRIUMPH APPROVAL**:

Name: ______________________

Date Received: ______________________

Date Approved: ______________________

# CHARTER BUS TRANSPORTATION REQUEST

Please return all request to: EMAIL: TRIUMPHCHARTER@GMAIL.COM

please use this number: +1 (313) 22
-0884

**GROUP NAME:** Wayne county commission Youth council **PHONE:** +1 (734) 341-1874

**ADDRESS:** 500 Griswold street, Detroit, Mi 48226

**TRIP DATE:** March 13, 2024 **REQUESTED BY:** ______________

**DESTINATION:** Michigan State Capitol **EMAIL:** wayneyouth2020@gmail.com

**ADDRESS:** 100 N Capitol Ave, Lansing, Mi 48933

Pick-Up Time: 7:30 (AM)/PM

Return Time: 5:00 AM/(PM) # of Buses 1

(Please Check the Appropriate):

☒ ENROUTE STOP Michigan capitol

☐ Shuttle Bus ☐ Athletic Request

☐ Local Tour ☐ Luggage/Equipment ☐ Other______________

**NO PERSONAL CHECKS FOR TRANSPORTATION SERVICES**

Person/Agency Paying for trip:
(Please list your complete itinerary with addresses and times. If necessary, please use additional paper)

| | |
|---|---|
| Name Cynthia M Douglas | Multiple Destination |
| Address 500 Griswold street | 1st |
| City/Zip Detroit, Mi 48226 | Address |
| Phone +1 (313) 224-0948 | 2nd |
| | Address |
| | |

• Requesting Bus with TV, intercom, Movies

**TRIUMPH APPROVAL**:

Name: ______________________

Date Received: ______________________

Date Approved: ______________________

## Business Trip Itinerary| Name

| Date | Depart from | Depart time | Destination | Arrival time | Destination address |
|---|---|---|---|---|---|
| 03/13/2024 | Guardian Building | 7:30 AM | Michigan State Capitol | 9:00 AM | 100 N Capitol Ave, Lansing, Mi 48933 |
| | | | | | |
| 03/13/2024 | Michigan state capitol | 4:00PM | Guardian Building | 5:30 PM | 500 Griswold Street, Detroit, Mi 48226 |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |

NOTES:

We will be ready to board the bus at 7:30 am from the Guardian Building. we are hoping to arrive at the Michigan State capitol by 9:00 AM promptly. The exact drop off location will be on Ottwa street at the Capitol Visitor center. Address is 323 W ottawa st, Lansing, Mi 48933

our depature time from the visitor center where they dropped us off in the morning will be 4:00 pm. we will head back to the Guardian Building and we aim to arrive between 5:00 PM and 5:30 PM, depending on the traffic that day.

**TRIUMPH APPROVAL**:

Name: ____________________

Date Received: ____________________

Date Approved: ____________________

# Wayne County Commission Youth Council

**December 9, 2023**

**NOTICE OF MEETING**

**OF THE**

**WAYNE COUNTY COMMISSION**

**YOUTH COUNCIL**

**Zion McCann**
**Keyaira Johnson**
**Nidhi Narendra Kumar**
**Noah Gubin**
**Thomas Besek**
**Kelli Cox**
**Jahnean Jackson**
**Payton Kitchen**
**Rishi Narendra Kumar**
**Lauren Hopson**
**Leah Irving**
**Priya Roy**
**Jayla Jackson**
**Jasir Rahaman**
**Maddison Fleming**
**Maya Freitas**
**Olivia Sherwood**
**Leila Hilden**

**Saturday, December 9, 2023 –11:30 AM.**

**Commissioner Monique Baker McCormick has scheduled a meeting of the Wayne County Commission Youth Council on Saturday December 9, 2023 at 11:30 a.m. at the Detroit Institute Of Arts (5200 Woodward Avenue, Detroit, MI 48202) to consider the following:**

A. Roll Call

B. Opening Invocation

C. Guest Speaker - U.S. District Attorney Dawn Ison

D. Old Business

1. Discussion of Resolution Topics for the Year
2. Discussion Book Reading Assignment - The 7 Habits of Highly Effective Teens

E. New Business

1. Discussion of Social Events for members this Year and Next Year

F. Announcements by Members

G. Public comments

H. Adjournment

Next Meeting: **January 26, 2024** from 6:00pm to 7:30pm via. **Zoom**

# Wayne County Commission Youth Council

**December 9, 2023**

**NOTICE OF MEETING**

**OF THE**

**WAYNE COUNTY COMMISSION**

**YOUTH COUNCIL**

**Zion McCann**
**Keyaira Johnson**
**Nidhi Narendra Kumar**
**Noah Gubin**
**Thomas Besek**
**Kelli Cox**
**Jahnean Jackson**
**Payton Kitchen**
**Rishi Narendra Kumar**
**Lauren Hopson**
**Leah Irving**
**Priya Roy**
**Jayla Jackson**
**Jasir Rahaman**
**Maddison Fleming**
**Maya Freitas**
**Olivia Sherwood**
**Leila Hilden**

**Saturday, December 9, 2023 –11:30 AM.**

**Commissioner Monique Baker McCormick has scheduled a meeting of the Wayne County Commission Youth Council on Saturday December 9, 2023 at 11:30 a.m. at the Detroit Institute Of Arts (5200 Woodward Avenue, Detroit, MI 48202) to consider the following:**

A. Roll Call

B. Opening Invocation

C. Guest Speaker - U.S. District Attorney Dawn Ison

D. Old Business

1. Discussion of Resolution Topics for the Year
2. Discussion Book Reading Assignment - The 7 Habits of Highly Effective Teens

E. New Business

1. Discussion of Social Events for members this Year and Next Year

F. Announcements by Members

G. Public comments

H. Adjournment

Next Meeting: **January 26, 2024** from 6:00pm to 7:30pm via. **Zoom**

# Wayne County Commission

**Monique Baker McCormick**
Commissioner District 6
Wayne County Commission

SEAL OF THE CHARTER COUNTY OF WAYNE, MICHIGAN
WE PRODUCE · WE DEFEND · IN GOD WE TRUST · FREEDOM OF MAN · 1796

WAYNE COUNTY COMMISSION
500 GRISWOLD, 7TH FLOOR
DETROIT, MICHIGAN 48226

Commission Office:
(313) 224-0884
Fax: (313) 967-1239
mbmccormick@waynecounty.com

**MEMORANDUM**

TO: Cynthia Douglas,
Administration and Budget

FROM: Commissioner Monique Baker McCormick

DATE: October 10, 2023

RE: Books

Dear Cynthia:

I am requesting payment to Source Bookseller from the Wayne County Commission Youth Council budget for 22 copies of the book called the 7 habits of highly effective teens in the amount of $395.78.

This book is what we had selected for our members this year to read as one of their projects on the youth council.

If you have any questions, please feel free to contact me.

Thank you for your help in this matter.

Sincerely,

Monique Baker McCormick

Monique Baker McCormick, MBA
Wayne County Commission District 6

**Source Bookseller LLC**
*A Unique Niche of Non-Fiction Books*

# INVOICE

4240 Cass Ave Suite 105
Detroit MI 48201
Phone: 313 832-1155

INVOICE # 210
DATE: 101023

**TO:**

Wayne County Youth Council
313 224-0884

**SHIP TO:**
Wayne County Youth Council

**COMMENTS OR SPECIAL INSTRUCTIONS:**

| SALESPERSON | P.O. NUMBER | REQUISITIONER | SHIPPED VIA | F.O.B. POINT | TERMS |
|---|---|---|---|---|---|
| Janet Jones | | | | | Due on receipt |

| QUANTITY | DESCRIPTION | UNIT PRICE | TOTAL |
|---|---|---|---|
| 22 | The 7 Habits of Highly Effective Teens by Sean Covey | 17.99 | 395.78 |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | **SUBTOTAL** | **395.78** |
| | | SALES TAX | 0.00 |
| | | SHIPPING & HANDLING | Pick up |
| | | TOTAL DUE | 395.78 |

Make all checks payable to Source Bookseller LLC
If you have any questions concerning this invoice, contact Janet Jones, 313 832-1155, sourcebooksellers@gmail.com

**THANK YOU FOR YOUR BUSINESS!**

# Wayne County Commission

**Monique Baker McCormick**
Commissioner District 6
Wayne County Commission

SEAL OF THE CHARTER COUNTY OF WAYNE, MICHIGAN
WE PRODUCE WE DEFEND
IN GOD WE TRUST
FREEDOM OF MAN
1796

WAYNE COUNTY COMMISSION
500 GRISWOLD, 7TH FLOOR
DETROIT, MICHIGAN 48226

Commission Office:
(313) 224-0884
Fax: (313) 967-1239
mbmccormick@waynecounty.com

**MEMORANDUM**

TO: Cynthia Douglas,
Administration and Budget

FROM: Commissioner Monique Baker McCormick

DATE: October 10, 2023

RE: Books

Dear Cynthia:

I am requesting payment to Source Bookseller from the Wayne County Commission Youth Council budget for 22 copies of the book called the 7 habits of highly effective teens in the amount of $395.78.

This book is what we had selected for our members this year to read as one of their projects on the youth council.

If you have any questions, please feel free to contact me.

Thank you for your help in this matter.

Sincerely,

Monique Baker McCormick

Monique Baker McCormick, MBA
Wayne County Commission District 6

**Source Bookseller LLC**
*A Unique Niche of Non-Fiction Books*

4240 Cass Ave Suite 105
Detroit MI 48201
Phone: 313 832-1155

# INVOICE

INVOICE # 210
DATE: 101023

**TO:**

Wayne County Youth Council
313 224-0884

**SHIP TO:**
Wayne County Youth Council

**COMMENTS OR SPECIAL INSTRUCTIONS:**

| SALESPERSON | P.O. NUMBER | REQUISITIONER | SHIPPED VIA | F.O.B. POINT | TERMS |
|---|---|---|---|---|---|
| **Janet Jones** | | | | | Due on receipt |

| QUANTITY | DESCRIPTION | UNIT PRICE | TOTAL |
|---|---|---|---|
| 22 | The 7 Habits of Highly Effective Teens by Sean Covey | 17.99 | 395.78 |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | **SUBTOTAL** | **395.78** |
| | | SALES TAX | 0.00 |
| | | SHIPPING & HANDLING | Pick up |
| | | TOTAL DUE | 395.78 |

Make all checks payable to Source Bookseller LLC
If you have any questions concerning this invoice, contact Janet Jones, 313 832-1155, sourcebooksellers@gmail.com

**THANK YOU FOR YOUR BUSINESS!**

# Wayne County Commission

**Monique Baker McCormick**
Commissioner District 6
Wayne County Commission

SEAL OF THE CHARTER COUNTY OF WAYNE, MICHIGAN 1796 — WE PRODUCE — IN GOD WE TRUST — WE DEFEND — FREEDOM OF MAN

WAYNE COUNTY COMMISSION
500 GRISWOLD, 7TH FLOOR
DETROIT, MICHIGAN 48226

Commission Office:
(313) 224-0884
Fax: (313) 967-1239
mbmccormick@waynecounty.com

**MEMORANDUM**

TO: Cynthia Douglas,
Administration and Budget

FROM: Commissioner Monique Baker McCormick

DATE: October 28, 2022

RE: Polo Shirts and Sashes

Dear Cynthia:

I am requesting payment for 20 Sashes and 27 Polo Shirts in the amount of $1,209.73 from the Wayne County Commission Youth Council Budget. These were the shirts and sashes from last year which were not paid for.

We had received the merchandise on October 28, 2022 but the vendor Goldfinger Industries stated that he had not received payment for the attached invoice.

If you have any questions, please contact the vendor Mr. Butch at +1 (313) 737-4002

Thank you for your help in this matter.

Sincerely,

Monique Baker McCormick

Monique Baker McCormick, MBA
Wayne County Commission District 6

GOLDFINGER GLOBAL BRAND
Greenfield Plaza
21700 Greenfield Rd. Suite 134
Oak Park, MI 48237

Phone: 313-737-4002
Email: goldfinger1016@aol.com

# INVOICE

INVOICE: # 411
DATE: Oct 18, 2022

| BILL TO: | | SHIP TO: | |
|---|---|---|---|
| Recipient Name: | Cynthia Douglas | Recipient Name: | |
| Company Name: | WCCYC / Wayne County Commission | Company Name: | |
| Street Address: | | Street Address: | |
| City, ST ZIP Code: | | City, ST ZIP Code: | |
| Phone: | | Phone: | |
| Email: | | Email: | |

COMMENTS OR SPECIAL INSTRUCTIONS:

| QUANTITY | DESCRIPTION | UNIT PRICE | TOTAL |
|---|---|---|---|
| 20 | Sashes | 20.00 | $400.00 |
| Sm 7 | | 29.99 | $209.93 |
| Med 6 | Black Polo | 29.99 | $179.94 |
| Lg 9 | | 29.99 | $269.91 |
| XL 5 | | 29.99 | $149.95 |
| | | | |
| | | | |
| | | | |

| | |
|---|---|
| SUBTOTAL | $1,209.73 |
| SALES TAX | 0 |
| SHIPPING & HANDLING | 0 |
| RUSH ORDER OR OTHER EXPENSE | 0 |
| DISCOUNT | 0 |
| DEPOSIT | |
| BALANCE DUE | $1,209.73 |

# CHARTER BUS TRANSPORTATION REQUEST

Please return all request to: EMAIL: TRIUMPHCHARTER@GMAIL.COM

please use this number: +1 (313) 22[illegible] -0884

**GROUP NAME:** Wayne county commission youth council **PHONE:** +1 (734) 541-1874

**ADDRESS:** 500 Griswold street, Detroit, Mi 48226

**TRIP DATE:** March 13, 2024 **REQUESTED BY:** ________

**DESTINATION:** Michigan State Capitol **EMAIL:** Wayneyouth2020@gmail.com

**ADDRESS:** 100 N Capitol Ave, Lansing, Mi 48933

Pick-Up Time: 7:30 (AM)/PM

Return Time: 5:00 AM/(PM) # of Buses 1

(Please Check the Appropriate):

☒ ENROUTE STOP Michigan capitol

☐ Shuttle Bus ☐ Athletic Request

☐ Local Tour ☐ Luggage/Equipment ☐ Other________

**NO PERSONAL CHECKS FOR TRANSPORTATION SERVICES**

Person/Agency Paying for trip:
(Please list your complete itinerary with addresses and times. If necessary, please use additional paper)

| | |
|---|---|
| Name Cynthia M Douglas | Multiple Destination |
| Address 500 Griswold street | 1st |
| City/Zip Detroit, Mi 48226 | Address |
| Phone +1 (313) 224-0948 | 2nd |
| | Address |
| | |

• Requesting Bus with TV, intercom, Movies

**TRIUMPH APPROVAL**:

Name: ________

Date Received: ________

Date Approved: ________

Wayne County Commission

**Monique Baker McCormick**
Commissioner District 6
Wayne County Commission

WAYNE COUNTY COMMISSION
500 GRISWOLD, 7TH FLOOR
DETROIT, MICHIGAN 48226

Commission Office:
(313) 224-0884
Fax: (313) 967-1239
mbmccormick@waynecounty.com

**MEMORANDUM**

TO: Cynthia Douglas,
Administration and Budget

FROM: Commissioner Monique Baker McCormick

DATE: October 28, 2022

RE: Polo Shirts and Sashes

Dear Cynthia:

I am requesting payment for 20 Sashes and 27 Polo Shirts in the amount of $1,209.73 from the Wayne County Commission Youth Council Budget. These were the shirts and sashes from last year which were not paid for.

We had received the merchandise on October 28, 2022 but the vendor Goldfinger Industries stated that he had not received payment for the attached invoice.

If you have any questions, please contact the vendor Mr. Butch at +1 (313) 737-4002

Thank you for your help in this matter.

Sincerely,

Monique Baker McCormick

Monique Baker McCormick, MBA
Wayne County Commission District 6

# CHARTER BUS TRANSPORTATION REQUEST

Please return all request to: EMAIL: TRIUMPHCHARTER@GMAIL.COM

please use this number: +1 (313) 22( -0884

**GROUP NAME:** Wayne county commission youth council **PHONE:** +1 (734) 541-1874

**ADDRESS:** 500 Griswold street, Detroit, Mi 48226

**TRIP DATE:** March 13, 2024 **REQUESTED BY:** ______________

**DESTINATION:** Michigan State Capitol **EMAIL:** Wayneyouth2020@gmail.com

**ADDRESS:** 100 N Capitol Ave, Lansing, Mi 48933

Pick-Up Time: 7:30 (AM)/PM

Return Time: 5:00 AM/(PM) # of Buses 1

(Please Check the Appropriate):

☒ ENROUTE STOP Michgan capitol

☐ Shuttle Bus ☐ Athletic Request

☐ Local Tour ☐ Luggage/Equipment ☐ Other______________

**NO PERSONAL CHECKS FOR TRANSPORTATION SERVICES**

Person/Agency Paying for trip:
(Please list your complete itinerary with addresses and times. If necessary, please use additional paper)

| | |
|---|---|
| Name Cynthia M Douglas | Multiple Destination |
| Address 500 Griswold Street | 1st |
| City/Zip Detroit, Mi 48226 | Address |
| Phone +1 (313) 224-0942 | 2nd |
| | Address |
| | |

• Requesting Bus with TV, intercom, Movies

**TRIUMPH APPROVAL**:

Name: ______________________

Date Received: ______________________

Date Approved: ______________________

GOLDFINGER GLOBAL BRAND
Greenfield Plaza
21700 Greenfield Rd. Suite 134
Oak Park, MI 48237

Phone: 313-737-4002
Email: goldfinger1016@aol.com

# INVOICE

INVOICE: # 411
DATE: OCT 18, 2022

| BILL TO: | | SHIP TO: | |
|---|---|---|---|
| Recipient Name: | Cynthia Douglas | Recipient Name: | |
| Company Name: | WCCYC / Wayne County | Company Name: | |
| Street Address: | Commission | Street Address: | |
| City, ST ZIP Code: | | City, ST ZIP Code: | |
| Phone: | | Phone: | |
| Email: | | Email: | |

COMMENTS OR SPECIAL INSTRUCTIONS:

| QUANTITY | DESCRIPTION | UNIT PRICE | TOTAL |
|---|---|---|---|
| 20 | Sashes | 20.00 | $400.00 |
| SM 7 | | 29.99 | $209.93 |
| med 6 | Black Polo | 29.99 | $179.94 |
| Lg 9 | | 29.99 | $269.91 |
| XL 5 | | 29.99 | $149.95 |
| | | | |
| | | | |
| | | | |

| | |
|---|---|
| SUBTOTAL | $1,709.73 |
| SALES TAX | 0 |
| SHIPPING & HANDLING | 0 |
| RUSH ORDER OR OTHER EXPENSE | 0 |
| DISCOUNT | 0 |
| DEPOSIT | |
| BALANCE DUE | $1,709.73 |

TRIUMPH CHARTER

**Invoice: 8391**

Date: 13-Mar-2024

Phone: 313-381-5881 Fax: 313-381-5871

Bill To:

Cynthia Douglas
500 Griswold
Detroit, MI 48226

Remit To:

Triumph Charter LLC
4574 Webster
Ecorse, MI 48229
info@triumphtrans.com

| **Trip #** | **Requestor** |
|---|---|
| 11561 | Monique Baker McCormick |

**Motorcoach**

| | | | |
|---|---|---|---|
| Report to Yard | 13-Mar-2024 5:53 AM | Triumph Charter | 4574 Webster ST Ecorse, Mi 48229 |
| Pick Up | 13-Mar-2024 7:00 AM | Guardian Building | 500 Griswold St Detroit, MI 48226 |
| Drop Off | 13-Mar-2024 9:08 AM | MIchigan State Capital | 100 N Capitol Ave Lansing , MI 48933 |
| Pick Up | 13-Mar-2024 3:21 PM | MIchigan State Capital | 100 N Capitol Ave Lansing , MI 48933 |
| Drop Off | 13-Mar-2024 5:30 PM | Guardian Building | 500 Griswold St Detroit, MI 48226 |
| Return to Yard | 13-Mar-2024 5:57 PM | Triumph Charter | 4574 Webster ST Ecorse, Mi 48229 |

Vehicle Costs:

| | |
|---|---|
| Motorcoach | $1,200.00 |
| **Total Trip Cost:** | **$1,200.00** |
| **Total:** | **$1,200.00** |

**Received Payment: $0.00**

**Amount Due: $1,200.00**

TRIUMPH CHARTER

## Confirmation

Trip #: 11561
Trip Date: 13-Mar-2024

**Wayne County Commission Youth Council**
500 Griswold
Detroit, MI 48226
Contact: Monique Baker McCormick
Contact Email:
mbmccormick@waynecounty.com
Phone: 313-224-0948

Booked Date: 05-Dec-2023
Total Vehicles: 1
Total Passengers: 55
Sales Person: Triumph Charter

**Motorcoach** 1 x $1,200.00 = $1,200.00

| | | | |
|---|---|---|---|
| Report to Yard | 13-Mar-2024 5:53 AM | Triumph Charter | 4574 Webster ST Ecorse, Mi 48229 |
| Pick Up | 13-Mar-2024 7:00 AM | Guardian Building | 500 Griswold St Detroit, MI 48226 |
| Drop Off | 13-Mar-2024 9:08 AM | MIchigan State Capital | 100 N Capitol Ave Lansing , MI 48933 |
| Pick Up | 13-Mar-2024 3:21 PM | MIchigan State Capital | 100 N Capitol Ave Lansing , MI 48933 |
| Drop Off | 13-Mar-2024 5:30 PM | Guardian Building | 500 Griswold St Detroit, MI 48226 |
| Return to Yard | 13-Mar-2024 5:57 PM | Triumph Charter | 4574 Webster ST Ecorse, Mi 48229 |

**Total: $1,200.00**

Deposit Due: $200.00
Balance of $1,000.00 is due on 28-Feb-2024

If paying by Credit Card A 3% charge Added to all Transactions, If paying by check,make payable to Triumph Charter, LLC. P.O Box 1037, Lincoln Park, MI. 48146 also include your charter number on the check. THERE WILL BE A $30.00 SERVICE FEE FOR ALL RETURNED CHECKS. Deposits must be paid by the due date to assure that your coach(es) are reserved. Payments are refundable minus deposit once paid in full. Please be advised that ALL DEPOSITS ARE NON-REFUNDABLE. Your cost is based on the services detailed above and is subjectto change in accordance with your actual itinerary.
* In the event your trip requires a second driver, one full seat must be reserved for that driver. Please do not over book your coach.
*Customers will be responsible for all overnight hotel accommodations for Triumph Charter, LLC drivers, unless otherwise stated by MGT.
Please read and sign this agreement. Keep one copy for yourself and return one copy along with your payment as noted above. This company reserves the right to lease equipment from other charter companies in order to fulfill this agreement. This company shall not be liable for items left on the coach(es) or loss of time due to inclement weather. We cannot guaranteethe assignment of requested drivers or coach(es). A signed contract and deposit will confirm your reservations and acknowledge your acceptance of this agreement. SMOKING IS PROHIBITED at all times on our coaches. In case of an emergency on date of departure, please call (313) 381-5881

Signature: [signature] Date: 12/05/2023

**Invoice: 8391**
Date: 13-Mar-2024

TRIUMPH CHARTER

Phone: 313-381-5881 Fax: 313-381-5871

Bill To:

Cynthia Douglas
500 Griswold
Detroit, MI 48226

Remit To:

Triumph Charter LLC
4574 Webster
Ecorse, MI 48229
info@triumphtrans.com

| **Trip #** | **Requestor** |
|---|---|
| 11561 | Monique Baker McCormick |

**Motorcoach**

| | | | |
|---|---|---|---|
| Report to Yard | 13-Mar-2024 5:53 AM | Triumph Charter | 4574 Webster ST Ecorse, Mi 48229 |
| Pick Up | 13-Mar-2024 7:00 AM | Guardian Building | 500 Griswold St Detroit, MI 48226 |
| Drop Off | 13-Mar-2024 9:08 AM | MIchigan State Capital | 100 N Capitol Ave Lansing , MI 48933 |
| Pick Up | 13-Mar-2024 3:21 PM | MIchigan State Capital | 100 N Capitol Ave Lansing , MI 48933 |
| Drop Off | 13-Mar-2024 5:30 PM | Guardian Building | 500 Griswold St Detroit, MI 48226 |
| Return to Yard | 13-Mar-2024 5:57 PM | Triumph Charter | 4574 Webster ST Ecorse, Mi 48229 |

Vehicle Costs:

| | |
|---|---|
| Motorcoach | $1,200.00 |
| **Total Trip Cost:** | **$1,200.00** |
| **Total:** | **$1,200.00** |

**Received Payment: $0.00**

**Amount Due: $1,200.00**

TRIUMPH CHARTER

## Confirmation

Trip #: 11561
Trip Date: 13-Mar-2024

**Wayne County Commission Youth Council**
500 Griswold
Detroit, MI 48226
Contact: Monique Baker McCormick
Contact Email:
mbmccormick@waynecounty.com
Phone: 313-224-0948

Booked Date: 05-Dec-2023
Total Vehicles: 1
Total Passengers: 55
Sales Person: Triumph Charter

**Motorcoach** 1 x $1,200.00 = $1,200.00

| | | | |
|---|---|---|---|
| Report to Yard | 13-Mar-2024 5:53 AM | Triumph Charter | 4574 Webster ST Ecorse, Mi 48229 |
| Pick Up | 13-Mar-2024 7:00 AM | Guardian Building | 500 Griswold St Detroit, MI 48226 |
| Drop Off | 13-Mar-2024 9:08 AM | MIchigan State Capital | 100 N Capitol Ave Lansing , MI 48933 |
| Pick Up | 13-Mar-2024 3:21 PM | MIchigan State Capital | 100 N Capitol Ave Lansing , MI 48933 |
| Drop Off | 13-Mar-2024 5:30 PM | Guardian Building | 500 Griswold St Detroit, MI 48226 |
| Return to Yard | 13-Mar-2024 5:57 PM | Triumph Charter | 4574 Webster ST Ecorse, Mi 48229 |

**Total: $1,200.00**

Deposit Due: $200.00
Balance of $1,000.00 is due on 28-Feb-2024

If paying by Credit Card A 3% charge Added to all Transactions, If paying by check,make payable to Triumph Charter, LLC. P.O Box 1037, Lincoln Park, MI. 48146 also include your charter number on the check. THERE WILL BE A $30.00 SERVICE FEE FOR ALL RETURNED CHECKS. Deposits must be paid by the due date to assure that your coach(es) are reserved. Payments are refundable minus deposit once paid in full. Please be advised that ALL DEPOSITS ARE NON-REFUNDABLE. Your cost is based on the services detailed above and is subjectto change in accordance with your actual itinerary.
* In the event your trip requires a second driver, one full seat must be reserved for that driver. Please do not over book your coach.
*Customers will be responsible for all overnight hotel accommodations for Triumph Charter, LLC drivers, unless otherwise stated by MGT.
Please read and sign this agreement. Keep one copy for yourself and return one copy along with your payment as noted above. This company reserves the right to lease equipment from other charter companies in order to fulfill this agreement. This company shall not be liable for items left on the coach(es) or loss of time due to inclement weather. We cannot guaranteethe assignment of requested drivers or coach(es). A signed contract and deposit will confirm your reservations and acknowledge your acceptance of this agreement. SMOKING IS PROHIBITED at all times on our coaches. In case of an emergency on date of departure, please call (313) 381-5881

Signature: [signature] Date: 12/05/2023

Printed On: 05-Dec-2023